# BALTIMORE CONSOLIDATED RY. CO. *vs.* ISAAC N. FOREMAN.

*Contributory Negligence of Passenger Standing on Step of Street Car.*

Plaintiff, a passenger on a car of defendant's street electric railway, noti-
fied the conductor to stop at the next cross street and then took up a
position on the lower step of the platform. He was thrown off from
that position by a sudden jolt while the car was moving rapidly. Signs
in the car warned passengers not to stand on the steps and not to leave
the car while in motion, and there was ample room for the plaintiff to
stand on the platform. *Held*, that the plaintiff was guilty of such con-
tributory negligence by standing in a dangerous position as is a bar to
an action against the defendant to recover for the injuries suffered by
being thrown from the car.

Appeal from the Baltimore City Court (STOCKBRIDGE, J.),
where there was a verdict for the plaintiff for $1,250.

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Geo. Dobbin Penniman* (with whom was *Fielder C. Slingluff*,
on the brief), for the appellant.

Question involved. Did the act of the plaintiff in standing
upon the lower step of an electric car, when there was ample
room on the platform, knowing that it was moving with such
great rapidity that he, if thrown from the car by a sudden
jerk, would be unable to keep upon his feet and would fall
and would be hurt, constitute sufficient contributory negli-
gence to bar the plaintiff's recovery, when the plaintiff is so
thrown and hurt?

This case must not be treated as a case where a passenger
steps upon the lower step when the car is running at such a
slow speed that if forced to do so, the passenger can keep his
feet if compelled to jump, but it is a case where the speed of
the car was so great, that the passenger himself knew when
he got upon the lower step that anything which would cause

him to leave the car, either voluntarily or involuntarily, would cause an accident, because the speed of the car would make it impossible for him to keep on his feet when he reached the ground.

We submit that the negligence of the conductor in carelessly handling his car, (assuming the appellee's story to be true), and the negligence of the appellee in standing upon the lower step when the car was running at this rapid speed, mutually contributed to cause the accident, and under the established rule of law in this State, the appellee cannot recover for an accident to which his own negligence has so greatly contributed. In considering this case, therefore, one thing must always be clearly kept in mind, that is, that the appellee *knew* when he got down upon the lower step that the car was going so rapidly that if he lost his balance or was carelessly jerked off, he could not save himself from a fall by keeping upon his feet. *He knew* that the speed of the car *insured a fall* if for any reason he was compelled to leave the step.

The plaintiff was guilty of contributory negligence by riding on the step of the platform. *Hickey* v. *R. Co.*, 14 Allen, 429; *Camden R. Co.* v. *Hoosey*, 99 Pa. St. 492; *City Pass. R. Co.* v. *Wilkinson*, 30 Md. 224; *Cason's case*, 72 Md. 377; *Sharkey* v. *Lake Roland R. Co.*, 84 Md. 167.

Even if the proof should have been clear that the conductor pulled the bell for the car to start forward although he saw the plaintiff on the step, yet under the decisions of this Court that would not entitle the plaintiff to recover. We need only cite the facts in *Wilkinson's case* again as our authority.

*Edward L. Ward*, for the appellee.

The defendant's conductor was guilty of gross negligence in going inside the car at the time he pulled one bell for the car to stop, and before it reached Penn street, and slackened its speed so that a passenger could alight in safety, and that he was also guilty of gross negligence in remaining inside the car when he pulled two bells for the car to go ahead, without first ascertaining whether the passenger was off or had a rea-

sonable opportunity of getting off, although the car was not
crowded, and he could have ascertained this without any
trouble. The appellee stepped from the platform to the lower
step so as to be in readiness to alight as quickly as possible,
and thus facilitate quick service by the cars to the public, and
he had a perfect right to be there, for there was not any danger
in this position whatever, and had the conductor remained on
the platform so as to give him ample time before starting the
car to alight in safety, and had not given two bells for the car
to go ahead before the appellee had a chance to alight, the ac-
cident would not have occurred ; but when the conductor, as
a servant of the defendant, did not perform his duty towards
the appellee as a passenger, in bringing his car to a stop, or
giving him an opportunity to alight from the car in safety ;
but to contrary gave two bells to go ahead when he was still
a passenger on the car, and the lunge made by the sudden
starting of the car at a greater rate of speed than it was then
going having caused the accident and the injuries by pulling
the grip from the appellee's hand and throwing him into the
street, it is clear that the lower Court was not only right in
rejecting the prayer of the appellant to withdraw the case
from the jury, but that the appellant was clearly responsible
to the appellee for his injuries occasioned by the accident.
The law bearing upon this question is quite plain. The case
of *Tanner* v. *Buffalo Railway Co.*, in 5 American Negligence
Cases, 563, and in 25 New York Supplement, 242, is on all
fours with the case at bar. *Coleman* v. *Second Ave. R. Co.*,
114 N. Y. 611, is also in point.

BRISCOE, J., delivered the opinion of the Court.

This action was commenced in the Court of Common Pleas
of Baltimore City, but was subsequently removed to the Balti-
more City Court for trial. The suit was brought by the
appellee against the appellant to recover damages for personal
injuries sustained by him, while a passenger on one of the
appellant's cars. The appellant is a corporation, duly incor-
porated under the laws of the State for the purpose of con-

ducting street railways and owns and operates electric cars through and over the streets of Baltimore.

The declaration avers that the appellee on or about the 20th day of December, 1898, was a passenger on car No. 704 of the "Frederick Road Line," which is owned and operated by the appellant company and while a passenger on board of said car, he was violently thrown therefrom at the corner of Lombard and Penn streets, by the premature starting of the car by the defendant's agents and servants, and that he was greatly bruised and seriously and permanently injured, &c., and was made to suffer great pain and anguish, &c., and all of which were directly caused by the negligence and want of proper care on the part of the defendant company, its agents and servants, and without fault on the plaintiff's part. The judgment was for the plaintiff and the defendant has appealed.

The principal questions in the case arise upon the prayers and relate to the negligence of the defendant, and to the contributory negligence of the plaintiff.

At the trial of the case, the Court rejected the prayers, of both plaintiff and defendant, and granted in lieu thereof the following special instruction to the jury.

1st. That if the jury shall find that the injury to the plaintiff in this case was occasioned by the want of ordinary care and skill upon the part of the conductor or motorman of the defendant, such as by starting the car prematurely, or without affording the plaintiff a reasonable opportunity, under the circumstances, of alighting in safety from the car, the plaintiff is entitled to recover.

2nd. That any failure of the plaintiff at the time to exercise ordinary care on his part, as by taking his position upon the step of the car voluntarily and without necessity, while the car was in rapid motion, contrary to the warning posted in the car upon which the plaintiff was riding, and that such act of the plaintiff directly contributed to the accident in such wise that but for such act of the plaintiff the accident would not have occurred, then the defendant is entitled to a verdict, unless the jury shall further find that the peril to which the

plaintiff so exposed himself was observed by the conductor in sufficient time for him, under the circumstances as testified to, by the exercise of ordinary care upon his part to have prevented the accident.

3rd. That by ordinary care is meant such care and attention as are habitually employed by, or may be reasonably expected from, persons in the situation of the respective parties under all the circumstances as they existed at the time.

It is on this instruction that the questions arise to be decided on this appeal.

The plaintiff testified that on December 20th, 1898, the night of the accident, he took the Frederick road car at ten minutes of twelve o'clock at the corner of Greenmount and North avenues; that he boarded the car, went inside, sat down, paid his fare, and remained there until the car was going out Lombard street. The streets were not called out and he could not understand where the turns were, so he got up and walked outside and asked the conductor where we were, and he said we were going out Lombard street. The plaintiff then stated that he desired to leave the car at the corner of Howard and Fayette streets, but having been carried beyond this point he asked for a transfer back and being refused, he directed the conductor to stop at the next corner; that when he notified the conductor to stop he pulled the bell and stepped inside from the platform where they were both standing. He further testified that when the conductor pulled the bell to stop he stepped inside the car and that he, the plaintiff, got down on the lower step and waited for it to go slow enough to jump off, and that while he was on the lower or bottom step, the conductor pulled two bells, the car made a lunge, and jerking the grip out of his hands, he was thrown from the car and injured; that he was thrown from the car about the middle of the street between the two crossings; that at the time he got on the lower step the car was going too fast for him to consider it safe to jump off.

It was proved by the defendant that the following signs are posted on all the cars of the defendant company:

"Notice to Passengers."

"Passengers are not allowed to stand on the platform or sideboard of this car, or leave it while in motion, as it is dan-. gerous to do so. Passengers must remain seated until the car comes to a complete stop. Cars stop on the near side oɪ intersecting streets to take on or let off passengers. Passengers must enter and leave the car from the right hand side. Any one violating these regulations does so at his own risk. Agents of the company have no authority to waive these regulations."

It was further proved by the defendant that when the car stopped at Penn street, the conductor gave two bells to go ahead, as the plaintiff made no effort or attempt to get off. That the car was fifteen feet beyond Penn street, when the plaintiff jumped from the car.

There was other testimony on the part of the plaintiff and defendant at the trial below, but from an examination of the record it will be seen that the prominent and controlling fact in this case, is the careless conduct of the appellee which directly contributed to the injury.

The law which controls this and similar cases is clearly stated in *Baltimore City Pass. Ry. Co.* v. *Wilkinson*, 30 Md. 224, and *Baltimore and Yoɪktown Co.* v. *Cason*, 72 Md. 377. In *Wilkinson's case, snpra*, this Court said : "While the law casts upon the company the obligation of providing safe means of transportation and of employing skillful and competent agents, and it is responsible for the consequences of any failure or omission in this respect as well as for the negligence of its agents, there is a mutual obligation imposed upon the passenger to observe the reasonable regulations of the company in entering, occupying and leaving the cars ; and if a party be injured in consequence of a known violation of such regulations, unless compelled thereto by some existing necessity beyond his control, it is a breach of the contract on his part and the company is not responsible. In such case the question of negligence on the part of the passenger is a legal question for the Court to decide." And in *Cason's case*, where the

accident was the result of a violation of the company's regu-tion, this Court said : "Had the appellee been inside the car where he ought to have been, the injury would not have been sustained.  His own voluntary choice placed him in an ex-posed position and that position rendered the injury possible. It was a position not provided for him to occupy and even a careless observer must know that it was dangerous one to take.  He thought proper to make an experiment under cir-cumstances of peril open and known to him, which he could have reasonably avoided and it is no injustice that he is re-quired to bear the consequences of his own act."

In the case now under consideration, it was the glaring recklessness of the plaintiff himself and not the carelessness or negligence of the company or its agents which caused the accident.  The accident would not have happened if the ap-pellee had remained inside the car and had not gotten upon the lower step of the car, while it was running at such a rapid speed.  The car was not crowded and there was ample room for him to remain inside.  A passenger standing on the lower step, while a car is running at a high speed, is liable to be thrown from the car by any sudden jolt.

Upon this state of facts, we think the Court committed an error in rejecting the defendant's first prayer, which instructed the jury that the undisputed evidence in the cause shows that the negligence of the plaintiff directly contributed to the in-juries received by him, and the verdict should be for the defendant.

For the error in rejecting this prayer and in granting the special instruction the judgment must be reversed and as the appellee is not entitled to recover, a new trial will not be awarded.

*Judgment reversed with costs.*

(Decided January 15th, 1902.)