THE PRESIDENT, MANAGERS AND COMPANY OF THE BALTIMORE AND YORKTOWN TURNPIKE ROAD *vs.* JOHN H. CASON.

*Street passenger Railway—Personal injury—Contributory negligence.*

In an action against a street railway company to recover damages for a personal injury, it appeared that the plaintiff, while riding on the front platform of one of the company's cars, fell or slipped off, and his foot was crushed by the rear wheel. The car was in good repair, and neither the conductor nor the driver was negligent or careless in any particular. There was no unusual or extraordinary motion of the car at the time of the injury. In the car in which the plaintiff was riding, as in the other cars of the company, there was a printed notice in large type, forbidding passengers to stand or sit on the front platform. The plaintiff, who used the cars frequently, and was able to read, testified that he had never read the notice. There was ample standing room inside the car when the accident happened. HELD:

That the conduct of the plaintiff, in being on the front platform of the car, a perilous position, in violation of a reasonable regulation of the company, directly contributed to the injury that he sustained, and he was not entitled to recover.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, FOWLER, McSHERRY, and BRISCOE, J.

*Frank Gosnell,* and *Arthur W. Machen,* for the appellant.

*William S. Bryan, Jr.*, and *John T. Ensor*, for the appellee.

McSHERRY, J., delivered the opinion of the Court. .

This is an action to recover damages for a personal injury. The appellant is a corporation owning and operating a street passenger railway upon which cars drawn by horses are run from Holliday street, in Baltimore City, to Waverly, in Baltimore County. The appellee, in January, 1884, whilst riding on the front platform of one of the company's cars, fell or slipped off, and his foot was crushed by the rear wheel of the car passing over it. He instituted this suit to recover for that injury. At the trial in the Baltimore City Court the appellant asked the Court to withdraw the case from the jury upon two grounds;—*first*, because there was no legally sufficient evidence that the appellant had been guilty of negligence; and, *second*, because the appellee had, by his own negligence, directly contributed to the happening of the injury complained of. Both of these prayers were refused, and a verdict and judgment against the company have occasioned this appeal.

There is not the slightest evidence in the record that the platform, or any other part of the car was out of repair. The car did not leave the track, it did not come into collision with any thing, and neither the conductor nor the driver was negligent or careless in any particular. The appellee, after stating that he got on the front platform, and made no effort to go inside the car, describes the accident in these words: ''When the conductor, Mr. Anderson, came out after his fare, I had hold of the iron railing with my hand; when he came out, I let go, to put my hand in my pocket to get the fare to pay the conductor; about that time, before .I could recover my hold again, my foot slipped, and I fell with the motion of the car; I thought the car was going

up and down,—a kind of rough motion." J. Henning Jones, who got on the car with the appellee, and was also riding on the front platform, testifying for the plaintiff, said: "I could not tell you how he fell; I never knew he was off until I felt a jolt, and somebody says, 'a man fell off and the car ran over him.' I noticed no different motion or movement of the car until I felt the jolt; that appeared to me as if the car was to run over a block of wood, or some obstruction of that kind, on the track, which occurs every day; on this occasion we discovered very quickly that it had run over his foot." J. C. Wolf was also riding on the front platform, but did not see the plaintiff fall. These three passengers and the driver were the only persons on the front platform. It was further proved by George A. Galloway that he had formerly been a conductor in the company's service. He was then asked: "State what, to the best of your recollection, was the condition of the road from Lanvale street to Boundary avenue in January, 1884,—about that time?" He replied, "I don't know that I can remember positively about January, but about that time, or a short time previous, the sleepers running lengthwise on the track—they didn't have cross-ties in the city; the irons laid on the sleepers; it used to be so two or three years ago; I don't know whether they changed it since; but they didn't have cross-ties, but the track laid on the sleepers laid lengthwise as the car was running, and these sleepers had rotted away to a great extent just along there; and the cars would wave up and down just like a wave, as the track sunk and rose." Question. "Bobbed up and down?" Answer. "Yes sir, about that time—just about that time."

It was proved by the defendant that in the car which caused the injury, and in every other car belonging to the company, there were, and had always been, two

notices posted, printed in large type, headed "*Warning*," and forbidding passengers to stand or sit on the front platform; that the plaintiff had been in the habit of riding in these cars for some years, and that there was ample standing room inside the car when the accident happened. The plaintiff testified that, though he could read, he had never read these notices.

We have set forth pretty fully the testimony bearing on the two prayers alluded to. There ought to be, and there really is, no difficulty about the law applicable to the facts just set forth. There must be legally suffi- cient evidence to prove negligence, and to connect that negligence with the injury, before a Court is justified in allowing a case to go to the jury. Speculation or mere conjecture will not do. There are cases where the proof of the injury has, under certain circumstances, raised a presumption of negligence on the part of the carrier. As said by this Court in *Balto. & Ohio R. R. Co. vs. State, use of Mahone,* 63 *Md.*, 144, "if one is injured by the breaking down or upsetting of the vehicle used in the transportation, or by the colliding of one train with another, or by the train running off the track, from some defect in the road-bed, in these and other like cases, the *evidentiary facts* in themselves create a pre- sumption of negligence on the part of the carrier." The accident in the case at bar, not being attributable to any cause of the kind just mentioned, no presumption of negligence can arise from the mere fact of an injury. What, then, caused the accident? Assuming that the testimony of Galloway, who was not on the car when the accident happened, pointed with sufficient certainty to the month of January, 1884, is there any relation whatever between the condition of the sleepers, and the slipping and falling of the appellee? Whether the sleepers were decayed at the precise place where the appellee fell is, at most, not free from doubt; and there

Baltimore and Yorktown Turnpike Road *vs.* Cason.

is not the faintest suggestion in the record that the waving or undulation of the car, if occasioned by the defective sleepers, was in any respect different from, or more abrupt than, the ordinary motion of a street car. In fact, it did not even attract the attention of the other persons on the front platform.

Now, it is notorious, that just such motions as the appellee described, are of frequent and common occurrence in the running of street cars. "Judges cannot denude themselves of the knowledge of the incidents of railway travelling, which is common to us all." *Siner vs. Great Western Ry. Co., L. R.,* 4 *Ex.,* 123; *Dublin, Wicklow & Wexford Ry. Co. vs. Slattery,* 3 *App. Cas.,* 1155. These motions may arise from various causes. Crossing other tracks, passing over slight obstructions, inequalities in the track not amounting to actual defects and the elasticity of the rails, may produce just the undulating motion mentioned in the record, and experienced frequently by every one on street cars. It is beyond the highest skill to guard against and prevent them. That this particular motion of the car bore to the fall of the appellee, the relation of cause to effect may or may not be true. That the motion itself, at the place where the accident happened, was due to the decayed sleepers rather than to any one of the other circumstances which might have also produced that motion, is a matter of pure conjecture. That this motion was an act of negligence, or even evidence of negligence, is equally a matter of speculation. But it is perfectly clear that the motion of the car was neither unusual nor extraordinary. It did not *throw* the appellee from the platform; on the contrary, he expressly says that his foot slipped when he released his hold on the iron rod to get his fare, and that he fell with the motion of the car. A verdict convicting the company of negligence on the testimony given could be nothing more than a random guess.

But, in addition to this view of the case, there can be no doubt that the conduct of the appellee directly contributed to the production of the injury which he sustained.

It was held by this Court in *Balto. City Pass. Ry. Co. vs. Wilkinson*, 30 *Md.*, 232, that a regulation forbidding passengers to get on and off any car by the front platform was reasonable, and that knowingly to violate it was conclusive evidence of negligence on the part of a passenger. There is an obligation imposed upon the passenger to observe the reasonable regulations of the company in entering, occupying, and leaving the cars; and, if a party be injured in consequence of a known violation of such regulations, unless compelled thereto by some existing necessity beyond his control, the company is not responsible. *Penn. R. R. Co. vs. Zebe, et ux.*, 33 *Pa. S.*, 318. And when the plaintiff's own evidence shows that he took a place not assigned for passengers, but which they are expressly prohibited from occupying, and put himself in an exposed and perilous position, he must necessarily fail, unless he can also make it appear, upon some ground of necessity or propriety, that his being in that position was consistent with the exercise of proper caution and care on his part. *Hickey vs. Boston & Lowell R. R. Co.*, 14 *Allen*, 432. If he knew the regulation forbidding him to stand or sit on the front platform, he had no right to disregard it, even though the conductor or driver allowed him to do so; there being ample room for him to stand inside the car. When sufficient and suitable provision is made within the cars for all the passengers, the managers of the train are not under obligation to restrict them to their proper places, nor to prevent them from acts of imprudence, if they are old enough and intelligent enough to take care of themselves. "If they voluntarily take exposed positions with no occasion therefor, nor inducement thereto,

caused by the managers of the road, except a bare license by non-interference, or express permission of the conductor, they take the special risks of that position upon themselves." *Sweeny vs. Old Colony & Newport R. R. Co.,* 10 *Allen,* 368. The regulation was conspicuously posted in every car, and the appellee, who used the cars frequently, was able to read. He had the means at hand to inform himself fully, and the exercise of the slightest care would have advised him of the contents of these notices. The word *"Warning"* printed in large, full faced type at the top of the card, ought to have attracted his attention. In questions of negligence a person is held to know that which he ought to know for his own safety, and which by the exercise of reasonable care he could have known. *Baltimore & Ohio R. R. Co. vs. Kane,* 69 *Md.,* 23. The regulation in question was a perfectly reasonable and proper one. It was made for the safety and protection of those who travelled in the company's cars. The appellee had every opportunity to know it, and knowing it was bound to observe it, unless there was some necessity for his disregarding it. The conductor and driver had no authority to relax it. The accident was the direct result of the appellee's infraction of it. Had he been inside the car, where he ought to have been, the injury would not have been sustained. His own voluntary choice placed him in an exposed position, and that position rendered the injury possible. It was a position not provided for him to occupy, and even a careless observer must know that it was the most dangerous one to take. He thought proper to make an experiment under circumstances of peril open and known to him, which he could have reasonably avoided, and it is no injustice that he is required to bear the consequences of his own act. *Dietrich vs. Baltimore & Hall's Spring Ry. Co.,* 58 *Md.,* 359. Under these circumstances his conduct amounted, in law, to contri-

buting negligence and he will not be allowed to visit upon the company, even assuming it to have been negligent, the consequences of his own want of prudence and care.

Both prayers presented by the appellant should have been granted. For the error in rejecting them the judgment must be reversed; and as the appellee is not entitled to recover, a new trial will not be awarded.

*Judgment reversed.*

(Decided 19th June, 1890.)