# GEORGE R. CALLIS

## *vs.*

# UNITED RAILWAYS AND ELECTRIC COMPANY,
### A BODY CORPORATE.

*Negligence: passengers falling from electric car.    Evidence: judicial knowledge.*

The mere fact that the plaintiff was injured while a passenger on the defendant company's car does not of itself raise any presumption of negligence, in the absence of surrounding circumstances from which a legitimate inference of negligence could be drawn.                                    p. 411

Judges are not to shut their eyes to the knowledge of the incidents of railway travel common to all.                       p. 412

Electric cars do not run with perfect smoothness; they have certain irregular movements which do not of themselves justify the inference of negligence or carelessness on the part of those in charge.                                            p. 412

A passenger standing on the step of an electric car preparing to alight, while the car was still in motion, fell and was injured; in a suit against the company, on the ground that the injury was caused by the company's negligence, the only evidence in the plaintiff's favor was his own, to the effect that while so standing the car gave "just a sudden jerking forward," and he fell: *Held,* that this was not of itself sufficient to impute negligence to the company.                              pp. 411-412

*Decided April 26th, 1916.*

Appeal from the Superior Court of Baltimore City. (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Edgar Allan Poe* (with whom were *J. Kemp Bartlett, L. B. Keene Claggett* and *R. Howard Bland* on the brief), for the appellant.

*Joseph C. France* (with whom were *J. Stanislaus Cook* and *Albert R. Stuart* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

The action in this case was brought to recover damages for personal injuries sustained by the appellant, caused as it is alleged, by the negligence of the appellee company.

On the morning of January 6th, 1914, the appellant, then Secretary and Treasurer of the United States Fidelity and Guaranty Company, took a car of the defendant at his home near Catonsville for his office in the company's building, located on the southwest corner of German and Calvert streets, and extending westward on German street to Grant street or alley, which is between Light and Calvert streets, and about one hundred or one hundred and twenty-five feet from Calvert street.

The plaintiff on this occasion was later than usual in leaving his home and because of this fact he was in a hurry to reach his office. The car after passing Light street, going east on German street slowed down as it approached Grant street, because of obstructions in the street consisting of a car standing at the regular stopping point at the southwest corner of Calvert and German streets, and a wagon behind it.

In his testimony the plaintiff stated that about the time the car reached a point opposite the door of the Fidelity and Guaranty Company's building he went out upon the platform. The car then he says, was "going very, very slow, I stepped down on the platform at the rear entrance and had hold of the hand rail, and was about to swing off the car when all of a sudden there was a jolt, the car going ahead, and the result of it was that I was thrown out east on German street and beyond the rear end of the car, and some distance out into the street." The car at this time "had not entirely stopped, but was moving very slowly. The fact it was moving so very slowly was why I did start to get off." He was then asked "will you please tell us whether or not at the time you stepped off the car you believed the car was coming to a stop?", and he replied, "I never thought anything about it." Q. Will you tell us at what moment of time the car suddenly started forward, that you have already testified to, with reference to the time of your stepping off the car? A. When I started to get off the car, *I got about half way of.* Q. How do you mean? A. *I started to get off the car in a proper way, stepping back in the rear,* and while I was holding on to the car, *half of my weight was outside that car,* and when she plunged ahead I used all my strength to keep on the car, but being a big man—I weighed over two hundred pounds—my strength was not equal to it, and instead of stepping backwards, the jolt of the car going ahead threw me forward, I went ahead in the same direction the car was going, with the consequent result that I was dumped in the street. Q. When the car started ahead that you spoke of, had you or not actually stepped from the car? A. I had not gotten off the car. Q. Did I understand you to say that one foot was on the ground? A. No, I did not say that, I do not think so. Q. At the time you were thrown from the car where were your feet? A. On the lower step of the rear platform.

At the time he fell from the step of the car he states that he was holding on to the handrails. The right hand upon

the front rail and left upon the rear rail, facing towards Calvert street; and when asked to describe the movement of the car he said it was "just a sudden jerking forward." There was no other evidence offered by the plaintiff, as to how the accident occurred.

Mrs. Maggie Sommerwerck, a witness for the defendant testified that she was a passenger on the car at the time of the accident and saw the plaintiff when he stepped from the step of the car "and as quick as he stepped off he fell," but at such time she noticed nothing unusual in the movement of the car.

James W. Richardson also a passenger on the car at the time of the injury to the plaintiff testified "that while the car was proceeding very slowly, going east on German street, he arose to leave the car at Calvert street; he saw Mr. Callis (the plaintiff) start to leave the car; at the time witness was standing in the car holding on to a strap; plaintiff got off the car about opposite the entrance to the United States Fidelity and Guaranty Building, and while witness did not see plaintiff's feet, he thinks he fell after he had alighted from the car. The entrance to said building is about two cars' lengths from the corner.

The witness Staum, also a passenger seated near the front of the car did not see the plaintiff while he was in the act of alighting from the car, but testified at that time the car was in motion, although proceeding slowly, and did not recall that at such time there was any jarring, jerking or jolting of the car.

Frank E. DeLat, the conductor on the car upon which the plaintiff was a passenger testified "that the accident happened about fifty feet east of Grant street, a little to the west of the entrance of the United States Fidelity and Guaranty building; that the current was shut off at Grant street and that the car was drifting; that the plaintiff jumped off the car while it was in motion and ran towards the entrance of the United States Fidelity and Guaranty building and was injured by slipping in a depression in the street near

the curbstone; that the plaintiff had been a passenger in his
car a number of times and had frequently gotten off the car
while in motion, opposite the entrance of the United States
Fidelity and Guaranty building; and on one occasion he had
warned him that it was dangerous for a man of his age to do
this and that the plaintiff had replied, 'another conductor
gone nutty'; that immediately preceding the accident he
warned the plaintiff not to alight from the car while it was
in motion; that the car gave no jolt as the plaintiff alighted."

August C. Knust testified, "that the two signs that were
shown to him reading 'Warning: Persons who ride on the
steps, running board or platform, or get on or off while the
car is in motion assume the risk. It is dangerous. United
Railways & Electric Co.', were taken from car No. 6 of the
Druid Hill avenue line, which was the car involved in this
accident; these signs were located inside of the car, middle
way from each end, one on each side of the car."

At the conclusion of all the testimony, the defendant asked
that the case be withdrawn from the consideration of the
jury; first, because of a want of legally sufficient evidence;
and second, because the plaintiff, by his own negligence had
directly contributed to the happening of the accident result-
ing in the injury complained of. But these prayers were
refused, and the case was submitted to the jury upon the 1st.
and 3rd prayers of the plaintiff and the prayers granted to
the defendant company. The verdict of the jury being for
the defendant, a judgment in its favor was entered thereon.
It is from that judgment, that this appeal was taken. The
only exception found in the record is to the ruling of the
Court upon the rejected prayer of the plaintiff and the
granted prayers of the defendant. It will not, however, be
necessary to consider and pass upon this exception, if it be
shown that the case should have been taken from the jury
upon either of the grounds presented by the aforesaid re-
jected prayers of the defendant, for in such case the judg-
ment recovered by the defendant in the Court below must
be affirmed. We will therefore consider the ruling of the

Court in refusing to grant the said prayers of the defendant asking that the case be taken from the jury.

The act of negligence imputed to the defendant from which it is alleged the injury to the plaintiff resulted is, that it caused, or permitted the car operated by it to increase its speed while the plaintiff was about to alight or in the act of alighting from it, throwing him into the street, inflicting the injury complained of.

The mere fact that the plaintiff was injured while a passenger on the defendant's car does not of itself raise a presumption of negligence in the absence of surrounding circumstances from which a legitimate inference of negligence can be drawn. *Benedict* v. *Potts,* 88 Md. 55; *Western Maryland Railroad Co.* v. *Shirk,* 95 Md. 652; *Charles* v. *United Railway Co.,* 101 Md. 183.

As was said by JUDGE McSHERRY in *Balto. & Yorktown Turnpike Road* v. *Cason,* 72 Md. 380: "There must be legally sufficient evidence to prove negligence, and to connect that negligence with the injury, before a Court is justified in allowing the case to go to the jury. Speculation or mere conjecture will not do. There are cases where the proof of the injury, has under certain circumstances, raised a presumption of negligence on the part of the carrier. As said by this Court in *Ballo. & Ohio R. R. Co.* v. *State, use of Mahone,* 63 Md. 144: 'If one is injured by the breaking down or upsetting of the vehicle used in the transportation, or by the colliding of one train with another, or by the train running off the track, from some defect in the roadbed, in these and other like cases, the *evidentiary facts* in themselves create a presumption of negligence on the part of the carrier.'"

The accident in the case before us was not attributable to any of the causes above mentioned nor is it shown that the forward movement of the car complained of was unusual or extraordinary.

The plaintiff when asked to describe the movement of the car said it was "just a sudden jerking forward."

This does not characterize such forward movement as being unusual or extraordinary nor is it so characterized by the fact that the plaintiff was thrown from the step of the car in the manner and under the circumstances disclosed by the record.

"It is well known that electric cars do not run perfectly smoothly, and that there are certain irregular movements to which they are subject, and which do not justify the inference of negligence or carelessness on the part of those in charge," *Dawson* v. *Md. Electric Railway*, 119 Md. 376, and "Judges can not denude themselves of the knowledge of the incidents of railway traveling, which is common to us all." *Yorktown Turnpike Road* v. *Cason, supra.*

It is not disclosed by the record that such forward movement of the car was anything more than the ordinary and usual motion incident to the running of electric cars, and as such it does not as an evidentiary fact in itself create a presumption of negligence on the part of the defendant carrier. A sudden jolt or jerking forward of the car as the plaintiff describes it, not unusual or extraordinary, is no evidence of negligence on the part of the defendant company. That such motion of the car was an act of negligence or even evidence of negligence is a matter of speculation. But assuming it to have been negligence we then can not escape the conclusion from the evidence found in the record that the plaintiff by his own negligence directly contributed to the injury complained of.

The record discloses that at the time of the accident two signs or notices were exhibited in the car warning persons against riding on the platforms and in getting on and off the car while it was in motion. The plaintiff it seems had frequently alighted from the car at the place of the accident while the car was in motion, although he had been warned by the conductor of the danger to a man of his age in doing so. The place where he was standing on the lower step of the car while it was in motion was not, as disclosed by his own testimony, a safe place, at least for one of his

age and size (*Balto. Consol. R. Co.* v. *Foreman,* 94 Md. 226) and this fact should have been known to him and he also knew or should have known independent of the notice or warning received from the conductor of the even greater danger of attempting at such time to alight from the moving car.

As was said in *Yorktown Turnpike Road* v. *Cason, supra,* "when the plaintiff's own evidence shows that he took a place not assigned for passengers, but which they are expressly prohibited from occupying, and put himself in an exposed and perilous position, he must necessarily fail, unless he can also make it appear, upon some ground of necessity or propriety, that his being in that position was consistent with the exercise of proper caution and care on his part." He, of his own voluntary choice, and not upon the ground of "necessity or propriety," placed himself in this position of danger.

Under the facts and circumstances disclosed by the record, the conduct of the plaintiff amounted in law to contributory negligence and the defendant should not be held liable for the consequences of the plaintiff's own negligent acts. The case, we think, should have been taken from the jury, and as this would have resulted in a verdict and judgment for the defendant, the judgment in its favor in the Court below will be affirmed.

*Judgment affirmed, with costs to the appellee.*