## JONES *v.* BALTIMORE TRANSIT COMPANY

[No. 55, October Term, 1956.]

*Decided December 11, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Amos I. Myers* and *Robert S. Rody,* for appellant.

*Benjamin C. Howard,* with whom was *Patrick A. O'Doherty* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

A passenger on a bus, thrown and injured by its sudden stop, sued its owner for damages. At the conclusion of the plaintiff's case, the court directed a verdict for the defendant and the appeal is from the judgment that followed.

Mrs. Perry Jones, the plaintiff below and appellant here, left her place of employment and boarded a bus that ran north on St. Paul Street, intending to get off at Preston Street. She was standing between the fare box and the front door, facing front, as the bus approached Preston Street. She was asked exactly what took place and her answer was: "Well, the speed was very fast. It was a little too fast to be going there. On the corner, you know, where the passengers is supposed to get off, a car pulled in front of it, and he was going so fast that he had to throw on the brakes and avoid a more serious accident * * *." She then testified that she fell across the fare box and that two other ladies waiting to get off, also fell, one of them across her. She then testified further as follows: "Well, it wasn't quite ready to stop then but, you see, he was going so fast he, you know, when this car pulled in front of him and he had to throw on the brakes real—real—fast, you know, real quick, and that's when we all went down, and then he stopped." After she gave this testimony, the witness was withdrawn and the doctor testified as to the injuries. Appellant's counsel next called to the stand Mrs. Ethel Kelly, one of the passengers who fell at the same time as appellant. She testified that as the bus was going north on St. Paul Street after leaving Biddle Street, she got up to get off at Preston Street, the next stop, and that she was "standing at the front door like that (indicating) holding to the rail waiting to get off at Preston Street, and the bus was going very, very fast, and I could see up half-way of the block that there was a car standing there on the right-hand side of St. Paul Street in the bus stop, and the bus did not stop—or, did not slow down

its speed. It was going very, very fast, and it just stopped suddenly, and threw us over, and we were screaming and yelling." The testimony of appellant and Mrs. Kelly, quoted above, was all the testimony as to liability.

Appellant contends that the court erred in directing a verdict. She argues that her own evidence, that showed that the accident was caused by the negligence of the automobile which cut in front of the bus, may be disregarded and that the jury was entitled to find that the driver of the bus was negligent from the testimony as to the fast speed of the bus and its sudden stop—a stop so sudden as to cause three passengers to be thrown to the floor. We think the contentions are untenable.

The plaintiff in a suit based on negligence bears the burden of showing that it was the negligence of the defendant without disclosing the intervention of any independent factor that caused the harm complained of. In this context, an intervening cause means not a concurrent and contributing cause but a superseding cause, which itself is the natural and logical cause of the harm. Even if the plaintiff shows that the defendant was negligent, it is not enough; it must be shown that this negligence was the direct and proximate cause of the injury. *Restatement, Torts,* Secs. 440, 441, 447; *Parsons v. C. & P. Telephone Co.,* 181 Md. 502, 505.

These general principles have been applied by this Court in, cases analogous to the case before us. In *Klan v. Security Motors,* 164 Md. 198, the appellee was the owner of a taxicab in which the appellant, while a passenger, was injured as a result of a collision between the cab and an automobile. The appellee successfully contended that there was no direct proof of negligence against it but that there had been shown that the collision causing the injuries was produced by an independent, intervening cause as to which there was evidence of negligence. The Court applied the rule which is often applied in cases where *res ipsa loquitur* is relied on unsuccessfully, that "If, by the evidence of the plaintiff, it was disclosed that the injury complained of might have been caused either by the defendant's negligence or by the act of another for which the defendant was not responsible, then the doctrine (*res ipsa loquitur*) would not apply." The Court concluded:

"For the reason that the plaintiff has, himself, offered evidence of an intervening, independent, and efficient agency as one of the causes of the collision resulting in his injuries, it was incumbent on him to prove the defendant negligent to sustain his right to recover, and, in the absence of evidence to prove such negligence, the trial court properly instructed the jury for the defendant." In *Motor Tours v. Becker,* 165 Md. 32, the suit was by a passenger on a bus that was struck by a taxicab at an intersection as it was proceeding east on Fayette Street. The driver of the taxicab, called as a witness for the plaintiff, testified that he "tried to stop his car before crossing Fayette Street, but was unable to do so because the brakes were 'faulty,' although they had been working properly until that time * * *." It was argued that negligence could be inferred from the excessive speed of the bus which had been testified to. The Court said that the fact that the plaintiff was a passenger did not prevent the application of the rule that the negligence, of which the plaintiff complains, must be the proximate cause of the injury for which he sues. It pointed out the effort by the taxi driver to stop his cab before he entered the intersection and his failure to do so, because of the defect in its brakes, and concluded: "While relying upon the protection which the traffic sign was intended to afford for his right of way, the bus driver had no reason to anticipate and guard against such contingencies as those to which the accident in this case must be attributed, and to which the speed of the bus had no relation." The Court cited *Klan v. Security Motors, supra,* and said: "The principle of the decision in the cited case applies with special force to the facts now presented" and held that there should have been a directed verdict for the defendant. In *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 263, the Court held that the doctrine of *res ipsa loquitur* did not apply because it appeared from the evidence produced by the plaintiffs, or in their behalf, that causes for which the defendants were in no way responsible produced the injuries for which the damages were sought. The Court said: "In this case the plaintiffs themselves proved the details of the happening, foregoing reliance on *res ipsa loquitur;* and, having undertaken to prove the details, they

failed to show negligence on the part of the defendants. Indeed, they explained away the possible inference of negligence. Paradoxically, the plaintiffs proved too much and too little. * * * This is not a case of a defendant attempting to rebut an inference from the circumstances of the accident. In such a case the jury would be free to disbelieve his testimony. Here the appellees are not in a position to repudiate their own evidence." The Court reversed the judgment for the plaintiffs below and denied a new trial since there could be no recovery.

In *Tittlebaum v. Penna. R. Co.,* 167 Md. 397, 405, the Court discussed cases here relevant and adopted this statement of the law: " 'So also if it appears that the accident might have been the result of the wrongful acts or negligence of third persons * * * a *prima facie* case is not made out.' " See *Boznango v. Electric Co.,* 162 Md. 84, 91; *Regent Realty v. Ford,* 157 Md. 514, 521; *Realty & Mtg. Co. v. Ulrich,* 164 Md. 666, 670; *Wilson v. Blaustein,* 144 Md. 289, 292; *Walker v. Vail,* 203 Md. 321, 328; *Coastal Tank Lines v. Carroll,* 205 Md. 137, 146, *et seq.*

Appellant's effort to avoid the result dictated by the authorities cited above by segregating and relying only on the testimony as to the speed of the bus, coupled with that as to the sudden and violent stop, must fail. The concept of speed is a relative one. Negligence may not be inferred from general adjectival descriptions alone. In *Sonnenburg v. Monumental Tours,* 198 Md. 227, 237, there was testimony that the bus was going "at a terrific rate of speed". The Court held that "There is no evidence either (1) that the speed of the bus was excessive or (2) that it had any causal relation to the damage to appellant's property. If we assume, without deciding, that testimony that the bus was running 'at a terrific rate of speed' was admissible in evidence (*People's Drug Stores v. Windham,* 178 Md. 172, 180, 12 A. 2d 532), it was not legally sufficient to show that the speed was excessive and unlawful. *Cf. Kaufman v. Baltimore Transit Co.,* 197 Md. 141, 146-147, 78 A. 2d 464, 467." In *Kaufman v. Baltimore Transit Co.,* 197 Md. 141, 146, speaking of the situation where a seated passenger was hurled from his seat against the seat in front of him by a sudden stop, the Court said: "* * * it may be inferred

that a sudden stop was due to negligence of the operator, in the absence of other circumstances, not including such negligence, which necessitated the stop. *Charlton Bros. Transp. Co. v. Garrettson,* 188 Md. 85, 51 A. 2d 642. Such an inference must be drawn from facts, not from adjectives or other words used by witnesses to characterize the movement, *e. g.,* in the instant case, 'terrific jolt', 'very terrible—very severe jerk or jolt', 'unusually hard jerk'." See also for reference to the weakness of adjectival generalizations as the basis for the inference of negligence, a discussion of the cases in *Baltimore Transit Co. v. Sun Cab Co.,* 210 Md. 555, 560.

If we assume, without deciding, that the testimony as to the speed of the bus was evidence of negligence, we think that the appellant is not helped. Appellant's own testimony shows that the sudden stop of the bus was required by a car suddenly cutting in front of the bus. There was, of course, no contradiction of this evidence. The testimony of Mrs. Kelly did not affect, modify or qualify it in any way. Mrs. Kelly was silent as to whether or not a car had cut in front of the bus. Her testimony was merely that the bus suddenly stopped at or near a car she had observed parked in the bus stop when half a block away. There was no inconsistency between the two versions of the witnesses and no contradiction by either of the other. The cause of the accident clearly was the unexpected and unforeseeable action of the automobile that violated the rules of the road by invading the lane of the bus. In the face of this invasion the bus would have been required to make a sudden stop at any normal speed, and we think it can be only speculation that the greater speed of the bus, assuming that there was such speed, intensified the results and the injury that followed the sudden stop materially beyond what they would have been if the stop had been from a slower speed. The same observation was made in *Koester Bakery Co. v. Poller, etc.,* 187 Md. 324, 332, where the accident occurred when a truck suddenly swerved across the car track in front of the street car. To the argument that the testimony showed that the street car was travelling at an excessive rate of speed, the Court said: "But even if we assume, in this case, that top speed was unreasonable, and afforded some evidence of negli-

gence, we think there is no showing that the speed contributed to the happening of the accident. The cause of the accident was clearly the unexpected, and unforeseeable, entry of the truck upon the tracks at a point where the collision could not have been avoided even if the street car had been travelling at a speed of 25 miles per hour. Under such circumstances it cannot be inferred that the higher speed assumed was a contributing cause. * * * Whether a lesser injury would have resulted from an emergency stop at 30 miles per hour, than from an emergency stop at 40 miles per hour, is a matter of pure speculation, even if it be assumed that the car could have been stopped in a shorter distance at the slower speed." For similar holdings as to excessive speed not being a proximate cause, under circumstances sufficiently analogous to those of the instant case, to make the reference appropriate, see *Motor Tours v. Becker,* 165 Md. 32, *supra; Gudelsky v. Boone,* 180 Md. 265, 270; *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174.

It is trite but true and basic to note that where it is manifest to the court upon the plaintiff's own showing, uncontroverted, that there is "* * * no rational ground upon which a verdict can be based for the plaintiff, it becomes the duty of the court to direct a verdict for the defendant." *Baltimore Transit Co. v. Young,* 189 Md. 428, 436; *Eisenhower v. Baltimore Transit Co.,* 190 Md. 528, 532; *B. & O. R. R. Co. v. State,* 69 Md. 551, 559. We think it was manifest here that there was no rational ground upon which a verdict for appellant could be based.

*Judgment affirmed, with costs.*