## RETKOWSKY v. BALTIMORE TRANSIT COMPANY

[No. 222, September Term, 1959.]

*Decided May 18, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Harold Buchman* and *Charles A. Friedman,* with whom
was *Lawrence B. Coshnear* on the brief, for the appellant.

*George P. Bowie,* with whom was *John E. Boerner* on the
brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is another case in which the plaintiff attempted to es-
tablish negligence on the part of a common carrier by an ad-
jectival description of an alleged sudden start of one of the
defendant's streetcars. The trial judge granted a motion for
a directed verdict in favor of the carrier after both sides had
concluded their testimony, and the plaintiff has appealed.

The evidence must, of course, be viewed in the light most
favorable to the appellant. On November 9, 1957, the plain-
tiff, Helen Retkowsky, a woman 66 years of age, in good
health, boarded a streetcar carrying two shopping bags. She
characterized the weight of the bags as medium and said that
she "could carry them all right." After getting on the car, she
set one bag down, deposited her money in the fare box with
her right hand, said to the operator, "just a minute," and
started to turn around. As she got "turned around in front
of the box, the operator started and threw me right down on
the floor—set me right down in a sitting position." The op-
erator saw her get on the streetcar carrying her shopping bags,

and also saw her put one of the bags by the fare box and deposit her fare.

She stated the streetcar started with a "very sudden jerk," which threw her off balance; that she had been riding on streetcars for thirty years or more, but had never before experienced a jerk of that intensity; "it was very bad to throw me down like that." She was standing right "alongside" the driver when she turned—her back right up against the coin box. She had not made any move to walk. Her right side was to the driver. When she turned, she said she had no chance to do anything; the start of the streetcar jarred her and set her right down on the floor. She was intending, before she fell, to sit in the seat right behind the driver. She didn't get there, however, because it all happened so suddenly.

No one else was standing in the streetcar at the time and no one else fell. The only support she could have grasped, she said, was the operator of the streetcar or the window in back of him. The bag she had put down on the floor was turned over, and the other bag that she had been holding in her left hand was loosened therefrom, by the jolt. It was also lying on the floor. After her fall, the plaintiff pulled herself up by the vertical pole to her left, "the rail that divides going in and out of the streetcar." She then sat down on the seat behind the driver. In response to the driver's question: "Did you hurt yourself?", she replied, "I don't know, but I think I wrenched my back."

On cross-examination, Mrs. Retkowsky was shown a photograph of the interior of the streetcar and pointed to a pole right behind the driver's seat and to another on the other side which she had used to pull herself up. She stated that the pole behind the driver was the only support available to her. To counsel's question: "You turned around and at the time you were turning you were saying, 'just a minute' and at that time you were on the floor, is that correct?" she answered, "That's correct." The accident happened "in the matter of a second or so."

The plaintiff offered no witness other than herself with respect to the happening of the accident. The defendant's two

witnesses, one a passenger on the streetcar, the other the operator, stated that the streetcar made no unusual start after the plaintiff got on. They both testified that after the plaintiff put her one bag down and paid her fare, she picked the bag up and started walking to the rear of the car, and had gone about three to five steps before she fell down. The streetcar had gone at least three or four lengths and was moving at the time. The operator said he started the streetcar a second or two after the plaintiff picked up her bag. He said that he heard a noise about ten or fifteen seconds thereafter, and he looked into his rear-view mirror and saw Mrs. Retkowsky on the floor trying to get up. She was sitting between the two upright poles, one of which was three feet from the fare box, and the other four feet from the box. The driver said that the plaintiff did not say anything to him prior to her fall. He did not remember whether he had closed the door after she got on. This concluded the testimony.

The appellant frankly states that she is not unmindful of this Court's pronouncements in such cases as *Sunthimer v. Baltimore Transit Co.*, 217 Md. 52, 141 A. 2d 527, *Smith v. Baltimore Transit Co.*, 211 Md. 529, 128 A. 2d 413, *Jones v. Baltimore Transit Co.*, 211 Md. 423, 127 A. 2d 649, *Baltimore Transit Co. v. Sun Cab Co.*, 210 Md. 555, 124 A. 2d 567, *Kaufman v. Baltimore Transit Co.*, 197 Md. 141, 78 A. 2d 464, *Przyborowski v. Baltimore Transit Co.*, 191 Md. 63, 59 A. 2d 687, *Baltimore & Yorktown Turnpike Road v. Cason*, 72 Md. 377, 20 A. 113, and *Callis v. United Railways & Electric Co.*, 128 Md. 406, 97 A. 715, concerning the duty of a passenger, once on board a public carrier, to use reasonable care to protect himself against the normal motions of the vehicles incident to public transportation, and the proof required of a plaintiff who attempts to establish negligence on the part of the operator of a carrier by the use of strong adjectives or expletives characterizing a stop or a start.

If we should analyze in detail the ruling in the cases above cited (as well as the Maryland cases that have permitted recoveries by plaintiffs in similar cases), it would be pure repe-

tition; for Judge Hammond in the *Sun Cab Co.* and *Jones* cases, Judge Henderson in the *Przyborowski* case and Judge Markell in the *Kaufman* case did so thoroughly. The rationale of these cases (and this seems to be the general rule elsewhere) is succinctly and accurately stated by Judge Chesnut in *Johnston v. Greyhound Corporation,* 139 F. Supp. 551, 555, as follows:

> "* * * a plaintiff passenger does not make out a valid case of negligence, based on an alleged sudden start or stop of a bus or trolley car, merely by adjectival descriptions of the nature of the sudden start or stop, in the absence of some definite, factual incident thereof which makes it so abnormal and extraordinary that it can be legally found to have constituted negligence in operation."

The appellant attempts to bring this case, upon a factual basis, within the purview of the Maryland cases that have permitted recoveries; but, in her evidence as we have outlined it above, we are unable to discover outside of the adjectival descriptions of the starting of the streetcar any "definite, factual incident" which rendered the start so "abnormal and extraordinary that it can be legally found to have constituted negligence" in the operation of the streetcar. She made no attempt to show any unusual or extraordinary effect upon any other passenger, that there were any spontaneous exclamations of excitement by anyone, that there was any physical damage to the streetcar or the bags that she was carrying, or that she was thrown or propelled any unusual distance when she fell. On the contrary, the plaintiff testified, "It [the starting of the car] jarred me and set me right down on the floor. * * * I sat right down." And she admitted there were, at least, two upright posts or poles that were immediately available to her to steady herself until she was seated. The meaning of her remark to the operator, "Just a minute," she failed to make clear. Whether she was requesting him to wait a minute until she was seated, or the remark was directed to the payment of

her fare is not plain. In any event, we think the remark, if not simultaneous with the starting of the car and her fall, was at least concurrent therewith, and not sequential.

We think the instant case is quite similar, factually, to *Przyborowski, supra,* and that case and the others mentioned above are controlling here. In *Przyborowski,* the plaintiff, a woman 49 years of age, in good health, boarded a trackless trolley. She put her fare in the box and handed a "return slip" to the operator. The slip fluttered to the floor. She testified that when the slip fell to the floor the operator gave her a "very nasty look," and, when she stooped to pick up the slip, the car started "with a very fast jerk" which threw her on her right side. There was no testimony that any other passenger was unbalanced by the starting motion. A photograph showing nearly an identical situation as the interior of the trolley in the case at bar was introduced into evidence. In affirming judgments entered for the defendant upon directed verdicts, the Court pointed out that it could not say that a stooping position of a passenger *per se* is such a position of peril as to charge the operator of a public carrier with the duty of keeping the trolley stationary; that after a passenger is fairly aboard an operator may resume his ordinary duties as to the vehicle without further concern with the movements of passengers within the car; that it is the duty of passengers, once on board, to protect themselves against the normal motions of the vehicle incident to public transportation; and that, if there are exceptions to these general rules, the plaintiff had not brought herself within them.

The appellant relies heavily upon the case of *Belledeau v. Connecticut Co.,* 149 A. 127 (Conn. 1930), and claims, totally without warrant, it "is identical on the facts to the case at bar." The Court stated their rule to be the same as that stated in the Maryland cases cited above, saying, (149 A. 129) "We require that the description or characterization of the negligent cause of harm shall be accompanied by other proof."

The plaintiff in that case had boarded a one-man trolley car in which the passengers entered a vestibule which was separated from the body of the car. There was nothing avail-

able in the vestibule for a passenger to grip and support herself. There was evidence which permitted a finding that the motorman knew that the plaintiff had not had an opportunity to turn around to enter the body of the car and there was no support in the vestibule. The Court held, under these circumstances, it was a reasonable inference that it was the duty of the operator to afford her an opportunity to get in the body of the car on the way to her seat, where she could have protected herself by holding to some part of the car or its equipment.

The appellant "respectfully contends" that the rule as laid down in the Maryland cases cited above transforms the usual duty of a common carrier to exercise the highest degree of care into one requiring a minimum regard for the safety of passengers, is inconsonant with reality and imposes upon the jury, in such cases, the formality of a "meaningless presence." The rule does not change in the slightest the degree of care required of a common carrier of passengers; it deals only with the mode or method of a plaintiff proving negligence by such carriers. It is the established law of this State that while common carriers of passengers are not insurers of absolute safety for their passengers, yet they are bound to exercise the highest degree of care which is consistent with the nature of their undertaking. *Baltimore & Ohio R. R. v. State, Use of Hauer,* 60 Md. 449, 462; *Brooks v. Sun Cab Company,* 208 Md. 236, 241, 242, 117 A. 2d 554. And, in cases involving injuries caused by the motions or movements of conveyances carrying passengers, recoveries have been permitted or denied, depending upon whether such motions or movements were unusual or extraordinary, or usual and incident to normal operation. *Baltimore Transit Co. v. Sun Cab Co., supra,* 210 Md. 560. The rule under discussion is limited in its scope to cases where liability upon the part of a carrier for a sudden stopping, starting, lurching or other unusual or extraordinary motion or movement of the conveyance is attempted to be established by adjectival characterizations of such movements, without additional proof. It is not unique to Maryland, but seems to have been generally adopted elsewhere.

2 Stevenson, *Negligence in the Atlantic States* says at page 1198:

> "Proof of the negligence of a carrier by the characterization of the manner of stopping or starting a car or bus by strong adjectives or expletives will not generally suffice as descriptions of an act of negligence. This rule has been adopted generally by the courts as a matter of public policy, to avoid having liability based upon a mere expression of feeling on the part of the injured, which the experience of the courts has shown to be oftentimes the exaggeration of self-interest in anticipation of a judgment against a responsible defendant. The courts require that the description or characterization of the negligent cause of harm shall be accompanied by other proof."

*Judgment affirmed, with costs.*