# HAMILL *v.* UNION TRUST COMPANY OF MARYLAND

[No. 97, September Term, 1965.]

*Decided January 26, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPEN-
HEIMER, BARNES and McWILLIAMS, JJ.

*John C. Evelius* for the appellant.

*James D. Peacock,* with whom were *Semmes, Bowen &
Semmes* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

In this suit by Mildred V. Hamill (plaintiff-appellant) against
the Union Trust Company of Maryland (defendant-appellee)
to recover damages for the injuries she received as the result of
being struck by a revolving door as she was leaving the bank
of the defendant, the questions presented by the plaintiff on
appeal concern (i) the propriety of directing a verdict for the
defendant and (ii) the correctness of restricting the testimony
of expert witnesses.

Prior to the accident, the plaintiff had visited the bank—
located on the northeast corner of St. Paul and Baltimore
Streets with entrances on both streets—at least once or twice
a week and sometimes oftener during a period of eighteen or
nineteen years. It was her practice to go to the bank around
two o'clock in the afternoon. Ordinarily, she entered the bank
and left it by the St. Paul Street entrance. As a frequent visitor
to the bank, she had been in and out of the entrance where
the accident occurred on many occasions without ever having
experienced any difficulty with the revolving door or the steps
at the entrance. Although she was arthritic, she never used a
cane or crutch prior to the accident. She could enter a bus
without assistance and walked from the bus stop to work and
vice versa and to lunch or wherever she was required to go on
errands for her employer. And she was able to perform her
secretarial duties without difficulty.

On the day of the accident, as the plaintiff was slowly walk-
ing through the revolving door to leave the bank, a young man,
unknown to her and never thereafter identified, rushed into
the bank and rotated the door so rapidly that one of the wings
struck her in the back and caused her to fall out of the door
and down the steps at the entrance onto the sidewalk. She sus-

tained a fractured hip. The plaintiff could not recall where she was in the revolving door when she was struck or whether she took a step before she fell. Nor could she say whether or not she would have fallen if the steps outside the door had not been located where they were.

The revolving door had been maintained in good working order before the accident and the building engineer had never received any complaints as to its maintenance or operation. After the accident, the door was examined by a number of persons and found to be in good condition.

The entrance in question, which was and still is of a type in common use in Baltimore City, was constructed prior to 1930. The steps to the entrance, with the exception of the bottom one which is graduated in height, are seven inches high. At the top, the width of the threshold or platform opposite the center of the revolving door is seventeen and one-half inches. No evidence was offered of there ever having been another accident at the entrance. The vice-president, to whom complaints would normally be made, had never received a complaint concerning the door or entrance during the eighteen years he had held that position. Nor had the building engineer, who was so employed for over twenty-seven years, ever received a complaint about the steps at the door.

During the course of the trial the lower court permitted two architects, called as expert witnesses by the plaintiff, to testify that platforms outside of buildings having revolving doors should be of sufficient width where steps are involved to allow a person to take a step or two on a level plane, but refused to allow them to comment as to the significance of the seventeen and one-half inch platform with respect to the location of the revolving door and the edge of the top step. At the close of all the evidence, the motion of the defendant for a directed verdict, based on the ground that the plaintiff had failed to produce legally sufficient evidence to warrant submission of the case to the jury, was granted by the trial court.

(i)

Regardless of whether there was a showing of negligence on the part of the defendant, there was no evidence of a causal

connection between its alleged negligence and the injury sustained by the plaintiff. We think it is apparent therefore that the trial court was right in directing a verdict for the defendant. Even if the plaintiff had shown that the defendant was negligent in locating the revolving door "too close" to the steps, that fact by itself was not sufficient to establish the liability of the defendant for the injury complained of. In order for the plaintiff to recover, she also had to show that this condition—the nearness of the steps to the door—was the direct and proximate cause of the injuries she received. She failed to do so. See *Jones v. Baltimore Transit Co.*, 211 Md. 423, 127 A. 2d 649 (1956) ; *Parsons v. C. & P. Telephone Co.*, 181 Md. 502, 30 A. 2d 788 (1943).

On the question of proximate cause, it was said in *Holler v. Lowery*, 175 Md. 149, 200 Atl. 353 (1938), at p. 161 :

> "There is no mystery in the doctrine of proximate cause. It rests upon common sense rather than legal formula. Expressed in the simplest terms, it means that negligence is not actionable unless it, without the intervention of any independent factor, causes the harm complained of. It involves of course the idea of continuity, that the negligent act continuously extends through every event, fact, act, and occurrence related to the tortious conduct of the defendant, and is itself the logical and natural cause of the injury complained of."

The plaintiff concedes that the primary cause of her injury was the action of the unidentified young man who rushed into the bank causing a wing of the revolving door to strike her. While it is obvious that the young man would be liable for her injury, if he could be found, the plaintiff, nevertheless, contends that the defendant should also be liable, apparently on the theory that the alleged negligent location of the revolving door near the steps was a concurrent cause of her injury.

If, however, it is assumed, without deciding, that the testimony of the plaintiff and her witnesses as to the nearness of the steps to the revolving door was evidence of negligence, there was still no evidence that such proximity was a direct and proxi-

mate cause of the injury. The plaintiff, who had used the steps and revolving door to enter and leave the bank for nearly two decades, testified she did not know where she was in the revolving door when she was struck; she could not recall whether she took a step before she fell; nor could she say whether or not she would have fallen if the steps had not been there. Since there was no showing that the proximity of the door to the steps, either by itself or concurrent with the negligence of another, was a logical and natural cause of the injury the plaintiff sustained, it is clear that the alleged negligence on the part of the defendant was not actionable under the facts of this case, and we so hold. Having reached this conclusion, it is apparent that the in-state and out-of-state cases cited by the appellant and appellee, for and against the proposition that the defendant below was negligent, are not in point and for that reason they are not referred to herein.

(ii)

Since, under the facts of this case, a directed verdict would have been in order even if negligence had been established on the part of the defendant, the trial court did not commit reversible error in restricting the testimony of the expert witnesses. Their testimony, as the record indicates, concerned the purported negligence of the defendant and not the causal connection between it and the injury the plaintiff sustained. There was, as hereinbefore stated, no proof that the alleged negligence of the defendant was a direct and proximate cause of the injury to the plaintiff.

*Judgment for costs affirmed; appellant to pay the costs.*