# MASS TRANSIT ADMINISTRATION *v.* MILLER

[No. 183, September Term, 1973.]

*Decided March 7, 1974.*

The cause was argued before MURPHY, C. J., and BARNES, SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Hamilton O'Dunne*, with whom was *Patrick A. O'Doherty* on the brief, for appellant.

*Samuel Blibaum*, with whom was *Samuel S. Schenker* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

In this appeal, Mass Transit Administration (MTA) seeks to overturn a judgment of the Court of Special Appeals. Appellee, Willoris Miller, had sued MTA in the Superior Court of Baltimore City for damages for personal injury alleged to have been sustained while boarding one of MTA's buses on May 25, 1971. At the conclusion of all the evidence, the trial court granted MTA's motion for a directed verdict. On appeal, the Court of Special Appeals reversed that decision, *Miller v. Mass Transit Adm.*, 18 Md. App. 220, 306 A. 2d 261 (1973). We granted certiorari to review the question whether the evidence in the trial court was legally sufficient to have permitted the jury to decide the negligence *vel non* of the bus operator. For reasons that follow, we conclude the evidence of negligence was sufficient to require submission of that issue to the jury.

The evidence presented by appellant on the issue of negligence was neither extensive nor complex, as this excerpt from her testimony illustrates:

"Q. All right. Would you tell us what happened at that point.

"A. When the bus came, I had a bag in my left hand, in my arms, and I had a shopping bag in my right hand, along with my pocketbook and my bus

fare. When the bus stopped, I went to put my left foot on the bottom step and my right foot on the second step when the bus taken off, which caused —

\* \* \*

"Q. Would you describe how the bus took off.

"A. When the bus taken off, the man was rough like.

"Q. Let me stop you. What do you mean by 'rough like'?

"A. He taken off like he was in a hurry like.

"Q. When he took off rough, like you indicated, what happened?

"A. Well, I lost my posture and I fell down, . . . ."

In reversing the trial judge's decision that the evidence of negligence was insufficient to warrant the submission of that issue to the jury, the Court of Special Appeals held:

"We are persuaded that a passenger mounting the stairs to a public conveyance who has not yet placed both feet upon the floor of an area sufficiently large to carry passengers in safety, has not, as a matter of law, reached a position of safety so as to absolve the carrier of any further responsibility to keep the vehicle stationary. . . .

"Accordingly, we believe that the evidence that the plaintiff was on the stairs of the bus and had not yet reached the floor when the bus started was sufficient to submit to the jury the question of whether the [bus] was started before she had a reasonable opportunity to reach a place of safety. . . ." 18 Md. App. at 229-30.

In urging reversal, MTA contends that the trial judge was correct in ruling that appellant was in a position of safety when the operator started the bus; and therefore, to recover, that it was incumbent upon her to prove that the manner of

starting the bus was unusual or extraordinary. Hence, MTA argues, she was barred from recovery as a matter of law, since she failed to prove anything but an ordinary movement.

In considering this argument, we are mindful of two well-settled principles that bear upon this case, one procedural and the other substantive. Recently, in *Curley v. General Valet Service*, 270 Md. 248, 311 A. 2d 231 (1973), Chief Judge Murphy said for the Court:

" . . . [O]rdinarily [negligence] is a question of fact to be determined by the jury; that before it can be determined as a matter of law that one has not been guilty of negligence, the truth of all the credible evidence tending to sustain the claim of negligence must be assumed and all favorable inferences of fact fairly deducible therefrom tending to establish negligence drawn; that 'Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury'; that the rule requires submission of the case to the jury if there be any evidence, however slight, legally sufficient as tending to prove negligence, the weight and value of such evidence being left to the jury; . . . ." 270 Md. at 264.

The second principle relates to MTA's status as a common carrier. A common carrier is not an insurer of the safety of its passengers, but is bound to employ the highest degree of care for their safety, consistent with the nature of the undertaking. It owes its passengers a duty to deliver them to their destination as expeditiously as possible, consistent with safety. *St. Michelle v. Catania*, 252 Md. 647, 651, 250 A. 2d 874 (1969); *Ragonese v. Hilferty*, 231 Md. 520, 526, 191 A. 2d 422 (1963); *Retkowsky v. Balto. Transit Co.*, 222 Md. 433, 440, 160 A. 2d 791 (1960); *Smith v. Baltimore Transit Co.*, 214 Md. 560, 568, 136 A. 2d 386 (1957).

As the Court of Special Appeals held, and appellee tacitly concedes, the resolution of this case does not turn on

whether her fall was caused by an unusual or extraordinary movement of the bus, *see e.g., Retkowsky v. Balto. Transit Co., supra* at 440; *Smith v. Baltimore Transit Co.*, 211 Md. 529, 538, 128 A. 2d 413 (1957); *Jones v. Baltimore Transit Co.*, 211 Md. 423, 428-29, 127 A. 2d 649 (1956); *Kaufman v. Baltimore Transit Co.*, 197 Md. 141, 146-47, 78 A. 2d 464 (1951). Here, the evidence in this regard fell short of establishing such movement, and at most reflected the type of "mere adjectival description" previously held by this Court to be insufficient evidence of negligence, standing alone, for submission to a jury; *see Retkowsky v. Balto. Transit Co., supra*, and cases cited therein. As Judge Prescott said for the Court in *Retkowsky, supra*:

" . . . [A] passenger, once on board a public carrier, [is under a duty] to use reasonable care to protect himself against the normal motions of the vehicles incident to public transportation, and the proof required of a plaintiff who attempts to establish negligence on the part of the operator of a carrier [cannot be met] by the use of strong adjectives or expletives characterizing a stop or a start." 222 Md. at 437.

As we have indicated, the decision rendered by the Court of Special Appeals focuses not on the character of the vehicle's starting motion, but on appellee's position in the bus at that time. In essence, the Court held that while mounting the stairs, she had not yet reached a position of safety; and until she had done so, the operator was under a duty to keep the bus stationary.

In leveling its attack on that holding, MTA relies principally on two prior decisions of this Court: *Przyborowski v. Balto. Transit Co.*, 191 Md. 63, 59 A. 2d 687 (1948) and *Brocato v. United Rwys. & E. Co.*, 129 Md. 572, 99 A. 792 (1916). In *Brocato, supra*, a passenger, on boarding an electric car, had both feet planted on an exterior platform, a level area large enough to hold a number of passengers then standing on it. When she attempted to move from this "platform" to the interior of the car, ". . . 'she

caught her foot on the step that leads into the car from the platform[,] the car gave a jerk and she fell down . . . .' " In sustaining a directed verdict for the defendant, this Court quoted with approval from an earlier Massachusetts case, *Martin v. Boston E.R.W. Co.*, 216 Mass. 361, 103 N. E. 828 (1914), saying:

> "The Court in applying the law of Massachusetts to the facts of the case and in affirming the judgment of the Court below said: 'It is settled law in this commonwealth that under ordinary circumstances it is not negligence for a conductor to give the starting signal after the passenger is fully and fairly on the car. *Sauvan v. Citizens' Electric Street Railway*, 197 Mass. 176, 83 N. E. 405. In reaching that conclusion the Court recognized not only the imperative demand by [the public for rapid transportation, but] the fact known to experience, that ordinarily it is not necessary for the safety of a passenger in normal physical condition that the car should be delayed until he is seated.' *Saunders v. B.E.R.W. Co.*, 216 Mass. 355, 103 N. E. 779." 129 Md. at 575.

In *Przyborowski, supra,* the plaintiff boarded a trackless trolley. She put her fare in the farebox and handed a "return slip," which entitled her to a reduced fare, to the operator. The slip fell to the floor, and she stooped on both knees to retrieve the slip. While she was in that position, the trolley started with a "very fast jerk" and threw her to the floor. Although the passenger had been within reach of a vertical bar, she had apparently made no effort to grasp it before the car started. The Court there held that the passenger was "fairly aboard" and affirmed the trial court's directed verdict for the defendant, saying:

> ". . . [T]he cases seem to hold that after a passenger is *fairly aboard,* an operator may resume his ordinary duties as to the vehicle without further concern with the movements of passengers within the car. Conversely, it is the duty of passengers,

*once on board,* to protect themselves against the normal motions of the vehicle incident to public transportation. . . ." 191 Md. at 67 (emphasis added).

As Judge Davidson, for the Court of Special Appeals, aptly observed in response to MTA's reliance upon these authorities:

" . . . [T]hese cases are part of a long line of cases, too numerous to review here, which make it abundantly clear that once a passenger has planted both feet on a level portion of the floor of a vehicle sufficient in size to carry passengers in safety — be the place within or without the actual body of the car — he is in a place of safety and fairly on board. The duty is then his to see that he is not harmed by the normal movements of the car. . . ." 18 Md. App. at 225.

The pivotal question which emerges then is whether appellee had reached a place of safety, as a matter of law, when the bus began its motion. We agree with the Court of Special Appeals that whether she had was a question of fact and not one of law, and find support for this view in the following authorities: *Gorman v. Massachusetts Bay Transportation Authority,* 350 Mass. 760, 212 N.E.2d 568 (1965); *Hoffman v. St. Louis Public Service Co.,* 255 S.W.2d 736 (Mo. 1953); *Oklahoma Ry. Co. v. Parker,* 201 Okla. 193, 203 P. 2d 875 (1949); *see* 14 Am. Jur. 2d *Carriers* § 1016 (1964).

In *Hoffman, supra,* where the facts were strikingly similar to those in the case at bar, especially since the passenger there was also laden with two packages and her fare, the court stated in upholding a recovery against the carrier:

" . . . It is true that literally she was on the bus when it moved, but she also was in the act of mounting the steps to the bus floor; an act which, due to the necessity of making possible the entrance

into the bus by the passengers following her, the operator must have known she would perform before coming into a balanced position in anticipation of the bus starting forward; and, in that sense, plaintiff was in the act of boarding the bus when it moved.  . . .

" . . . The law is clear that *any* movement of the bus by defendant under the circumstances testified to by plaintiff in and of itself constituted negligence. 'In the instance of persons boarding or alighting from a carrier's conveyance, any movement of the vehicle before the passenger has had a reasonable opportunity to reach a place of safety therein or to alight is negligence, rendering the carrier liable for the resulting injuries.' (citations omitted)." 255 S.W.2d at 740-41. (emphasis in original).

In *Oklahoma Ry. Co. v. Parker, supra,* where the issue was also whether the passenger had reached a place of safety, the evidence showed that she had her left foot on the top floor of a street car, her right foot on the second step, and her hand raised to drop a token in the fare box. Moreover, there were two vertical handbars within reach, and there is no indication that the passenger was burdened with any packages. Affirming a judgment in her favor, the court held:

" 'The servants of a street car company who control the movements of its cars are bound to use due care in starting the same so as to allow passengers a reasonable opportunity to get safely on board, regard being had to the circumstances of each case.'

"Herein, *the question whether the car was started before the plaintiff had a reasonable opportunity to reach a place of safety therein was one for the jury. . . .*" 203 P. 2d at 877. (emphasis added.)

Notwithstanding our agreement with the Court of Special

Appeals that appellee had not yet reached a position of safety, as a matter of law, when the bus started, we think more is required in the circumstances of this case. For that reason, we are of the view that its holding may have been stated too broadly. Appellee contends for a rule — which she says enjoys widespread supporting authority — that merely starting the bus before the passenger has reached a place of safety, without more, is sufficient to require submission of the issue of negligence to a jury. We are unwilling to embrace a rule of such broad dimensions.

In addition to the movement of the bus before the passenger had reached a place of safety, there are the additional facts that she was encumbered with articles in her hands and was positioned at the front of the bus where the driver, while preparing to start, could reasonably have observed her. *Gorman v. Massachusetts Bay Transportation Authority* and *Hoffman v. St. Louis Public Service Co.*, both *supra; cf. Miller v. New Orleans Public Service*, 196 So. 86 (La. App. 1940); *Steeg v. St. Paul City Ry. Co.*, 50 Minn. 149, 52 N. W. 393 (1892), and *Normile v. Wheeling Traction Co.*, 57 W. Va. 132, 49 S. E. 1030 (1905). Our holding that, in the circumstances of this case, the issue of negligence should have been submitted to the jury is necessarily circumscribed by these additional determinative facts.

> *Judgment of the Court of Special Appeals affirmed; appellant to pay costs.*