## BALTIMORE TRANSIT COMPANY ET AL. *v.* SUN CAB COMPANY ET AL.

[No. 224, October Term, 1955.]

*Decided July 13, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, HENDERSON and HAMMOND, JJ.

*Hamilton O'Dunne,* with whom were *George P. Bowie* and *J. Sarsfield Sweeny* on the brief, for the appellants.

*Robert J. Dougherty* for Mr. Garcia, appellee.

*Frederick J. Green, Jr.,* for the Sun Cab Company and Mr. Arnoff, appellees.

HAMMOND, J., delivered the opinion of the Court.

This is an appeal by the motorman of a street car and its owner, his employer, the Baltimore Transit Company, from a judgment in favor of a passenger on the street car which had collided at an intersection with a taxicab, injuring the passenger. The jury exonerated the owner of the cab and its driver. The appeal is from the judgment in favor of those defendants, as well as from the judgment in favor of the passenger. Only the passenger, the appellee, offered testimony. The trial court refused to direct verdicts for the defendants, who then submitted the case to the jury. Three questions are presented for decision: 1, Was there evidence of negligence on the part of the operator of the street car which was the proximate cause of the injury? 2, Did the plaintiff by his own actions disentitle himself to recover? 3, Did the court err in charging the jury that the boulevard law of the State applied to a situation where one of two vehicles approaching

from opposite directions turned in front of the other at an intersection?

The appellee boarded the street car at Linden and North Avenues in Baltimore. About a dozen people were waiting on the corner and he was the last to get on. The car was so crowded that it was a little while before he could pay his fare and get his transfer. The operator of the car testified that the street car was loaded to capacity and that no more people could have gotten on the car, and that he would not have stopped to take on any more passengers. As the car proceeded down Linden Ave., the appellee was on the front platform holding on to the windowsill or dash. McMechen Street is a through street so that vehicles, including street cars, approaching from the north or south on Linden Ave., are required to come to a full stop and to yield the right of way to traffic on McMechen Street. There are at least two versions in the testimony as to what occurred as the street car approached McMechen Street. The motorman says that he came to a full stop, discharged passengers and then started off again and that, as he did so, the taxicab which had been coming north on Linden Ave., after stopping, suddenly started up and turned west in front of him just before the collision occurred. No one else in the case agreed with this version, including the jury. The motorman says further that just before the impact, perhaps when the car was four or five feet from the taxicab, he applied the brakes — "I put on the brake the best I could * * *." When asked whether he jammed his brakes when he saw the cab pull to the left, he said: "* * * I did everything I could to stop—I put the brakes on", although he explained that there was no need to jam the brakes.

Other testimony was that the street car had decreased its speed somewhat, or at least had not increased its speed, as it came downgrade from Wilson Street toward McMechen but that it did not come to a stop at McMechen Street, continuing across the intersection at rather slow speed until it was apparent that there might be a collision with the taxicab which had stopped, and had then started up and, in anticipation that the street car would stop, had turned left on McMechen Street to proceed west. Further testimony was that

the cab had been waiting in the westbound position long enough for the driver to attempt to put it in reverse as he realized that the street car was not going to stop. The appellee produced evidence that as the motorman realized the collision was imminent, he threw on the brakes which caused the street car to jiggle and to begin rocking, and that this precipitated the appellee into the well between the platform of the car on which he was standing and the closed door of the car. As he was getting up from the fall, the collision occurred and he was thrown down again. One of the witnesses said that when the motorman attempted to stop the car "* * * it was shaking back and forth * * * any street car that stops, tries to stop real fast there is a shaking action" and that when the collision occurred, the street car was shaking. He said the street car "shimmied and shook from side to side" and that no one was thrown down except the appellee, but that "People were tossed to and fro but they were holding on." After the street car struck the cab it continued south on Linden Ave. for some feet, so that when it came to rest, its rear half was blocking the intersection.

The cases involving injuries caused by the motions or movements of a street car have permitted or denied recovery, depending upon whether such motions or movements were unusual or extraordinary, or usual and incident to normal operation. Generally, where recovery has been allowed, the movements causing injury resulted from the negligent operation or management of the car or from a defect in the car or roadbed. Where recovery has been denied, usually there has been no showing of negligent operation that produced the movement complained of and the testimony has been mere characterization of the witnesses that the motion was extraordinary or violent and there was no independent evidence to support the characterization. *Kaufman v. Baltimore Transit Co.*, 197 Md. 141, 146, was such a case. There Judge Markell, for the Court, reviewed prior cases and pointed out that there was testimony that the jolt to which the injury was attributed was very severe and unusually hard, but also it had been said that the jolt was "* * * 'just like it always does when it starts off.'" It was noted that "* * * 'electric cars do not run perfectly smoothly

and there are certain movements to which they are subject, and which do not justify the inference of negligence or carelessness on the part of those in charge.'" The opinion continues: "Ordinarily the only direct evidence of the cause of a jolt or movement, and of negligence *vel non,* would be testimony of the operator of the car. But plaintiffs are not required to prove their cases out of the lips of their adversaries, and only occasionally are able to do so. * * * In the absence of such evidence, the results of the movement, upon the passenger in question or other passengers or both, may show the movement to have been so unusually violent or sudden as to justify an inference of negligence. * * * Such an inference must be drawn from facts, not from adjectives or other words used by witnesses to characterize the movement * * *." In *Grinath v. Balto. & Bel Air Ry. Co.,* 145 Md. 290, a passenger had gone into the car and was still standing when the motorman " '* * * started the car with a sudden jerk, so sudden that the windows shook * * *' " and was thrown to the floor. The Court noted that irregular motions are unavoidable and to be anticipated in the ordinary course of railway transportation. It pointed out that the duty of the street railway company was to exercise the highest care consistent with the nature of its undertaking and that it was required to use the utmost care and diligence to avoid endangering the lives and limbs of those whom they undertake to transport. The motorman testified in that case that when he applied the power "* * * 'she started with a quicker grab than he expected.' " The Court held that the sudden movement which caused the fall and injury could not be said to be expected in the ordinary course of normal operations. The Court held that there was error in the directed verdict for the railway company and that the case should have gone to the jury. In *United Rwys. Co. v. Phillips,* 129 Md. 328, there were no vacant seats when the passenger got on the car so she stood, holding onto the back of the seat in front of her, which she said was the only way she could hold on. After the car had started and gone several feet, she said: " '* * * there was a *sudden and unusual jerk* * * *.' " She continued: " 'You know often when a car starts there is a little jerk, and you have to be prepared for this, but this was such a violent jerk

that it caused the passengers to scream * * * and it swayed me forward and threw me down on my knees.' " The Court held: "The jerk or lurch of the car as described by the plaintiff in this case, judged by its results upon her and upon the other passengers, and apart from the adjectives used by her in describing it, shows it to have been of an unusual and extraordinary character, and so out of the ordinary as to suggest negligence in the management or control of the particular car."

We think that the case before us falls on the side of the line that entitles the passenger to have the jury pass on the negligence of the carrier. There was evidence, if believed by the jury, that permitted the finding that the motorman violated a statutory duty to stop at McMechen Street and that as a proximate result of this violation of legal duty, he was compelled to do everything he could to stop the car suddenly to avoid hitting the taxicab, that this brought about a rocking, swaying or jiggling of the street car that threw the other passengers back and forth and the appellee into the well and so brought about his injury. We feel that apart from the characterization of the movement of the street car by the witnesses, the descriptions of the effect of the sudden slowing and the impact, including the testimony of the motorman as to the necessity for the sudden stop and of his utmost efforts to bring it about, make the jury the proper ones to determine whether there was primary negligence.

The appellants' argument that the appellee's own actions disentitle him to recover has two thrusts. They say first that the passenger assumed the risk when he boarded the street car, and next that he was guilty of contributory negligence as a matter of law. In *Warner v. Markoe,* 171 Md. 351, 359, Judge Bond for the Court differentiated contributory negligence from assumption of risk in these words: "Contributory negligence, of course, means negligence which contributes to cause a particular accident which occurs, while assumption of risk of accident means [voluntarily incurring the risk of] an accident which may not occur, and which the person assuming the risk may be careful to avoid after starting. Contributory negligence defeats recovery because it is a proximate cause of the accident which happens, but assumption of the risk defeats recovery

because it is a previous abandonment of the right to complain if an accident occurs." It is the duty of a carrier to safely transport to his destination one whom it permits to enter its vehicles. It seems clear to us that a passenger who is permitted to enter a street car is not required correctly to anticipate whether he will find a seat or other safe place in which to travel before he enters, or else be held to travel at his peril regardless of what thereafter occurs. We see no substance to appellants' contention on this point nor do we think that under the circumstances of the case appellee was guilty of contributory negligence as a matter of law. Not only he, but other witnesses including the motorman, testified that the car was loaded to capacity and that he was the last passenger to get on. He said that he stood in the only place which was available to him and that he held onto the front windowsill or dash of the car. It is generally held that one riding on the platform of a train or street car is not guilty of contributory negligence *per se* but that the circumstances of each case and each occurrence must be taken into account in determining whether he was or was not. See the cases collected in the annotation in 50 *A. L. R.* 1365. See also *Fiedler v. Chicago & N. W. Ry. Co.,* 204 F. 2d 515; *Hardin v. San Jose City Lines* (Supreme Ct. of Calif., in Bank), 260 P. 2d 63, 67; *Farnon v. Boston & A. R. Co.* (Mass.), 62 N. E. 254; *Allison v. St. Louis & H. Ry. Co.* (Mo. App.), 137 S. W. 896, 898. In *United Rwys. Co. v. Weir,* 102 Md. 286, 290, there was testimony that a passenger was thrown as she attempted to step to the ground from the footboard of a moving street car. The Court said that the question of contributory negligence is ordinarily one of fact and not of law, and added: "Whether it be negligence *per se* for one to attempt to alight from a moving car must depend always upon the circumstances of the particular case." In *Strauss v. United Rwys. Co.,* 101 Md. 497, a passenger was sitting at the end of a cross seat of an open electric street car. He attempted, from his seat, to signal the conductor to stop at the next street and then he stood up and beckoned to the conductor. While he was standing, there was a sudden lurch which threw him from the street car. The Court held that the act of standing was not of itself improper and rejected the argu-

ment of the carrier that he was careless because he stood up at the very edge of the open car so that if anything occurred to cause him to lose his balance, necessarily he must have fallen off the car. The Court said: "But by the evidence, does it appear that on this point there cannot be a difference of opinion among reasonable persons?" It was held that the passenger was not guilty of contributory negligence as a matter of law. In *United Rwys. Co. v. Riley,* 109 Md. 327, the passenger got up on the rear platform of the street car and was injured when a runaway car on the same track crashed into the platform. The Court refused to hold that the standing of a passenger on the rear platform when there was room for him inside of the car was contributory negligence, when that position on the platform did not expose him to an obvious danger. In *United Rwys. Co. v. Phillips,* 129 Md. 328, 330, *supra,* the passenger was holding on while standing, much as the appellee in this case. The Court pointed out that it was not urged by the carrier that the plaintiff was guilty of contributory negligence, and impliedly agreed. In *Baur v. Calic,* 166 Md. 387, a workman being transported to his work in a truck fell from the running board on which he was standing by reason of the sudden stopping and swerving of the truck. It was held that the question of the driver's negligence was for the jury as was the question of the rider's contributory negligence. The Court pointed out that the workmen were transported to and from work, free of charge, and one truck, and no more, was furnished the gang of which the plaintiff was a member. It was not big enough to carry them all unless some of them rode on the fenders or running board. The Court said: "The fact that a plaintiff is riding upon a running board of a car is not, in itself, necessarily contributory negligence, depriving the plaintiff of the right to recover. Whether the act should have that effect is dependent upon the surrounding facts and circumstances of each particular case." The Court then cited *United Rwys. Co. v. Weir,* 102 Md. 286, and *Strauss v. United Rwys. Co.,* 101 Md. 497, both of which have been cited above. The Court went on to point out that the rider knew workmen were allowed to ride upon the running board, that although he had not been specifically

invited to do so, the fact that he was allowed to do so without warning of danger closely approached an invitation, and added: "By the evidence it does not appear that there could not be a difference of opinion among reasonable persons upon the question presented." See also *Baltimore Transit Co. v. State,* 184 Md. 250, 262, and *Richardson v. State,* 203 Md. 426.

10 Am. Jur., *Carriers,* Sec. 1493, states the law to be that if the passenger is necessarily on the platform because of conditions created by the carrier, it is not negligence *per se* for him to ride there. Sec. 1498 adds: "A passenger who without negligence stands upon the running board or step of a street car assumes the risks incident to the operation of the car in the customary and ordinary manner, such as the movements attendant upon starting and stopping, passing over curves, and the jolting and rocking of the car. He does not, however, assume those risks which are exceptional or which spring from the negligence of the carrier, such as those of derailment or collision." The decisions of this Court have reflected the same view. In *Sanders v. Williams,* 209 Md. 149, 152, it was said: "As is true of primary negligence, one measure of contributory negligence is the need, in a given situation, to anticipate danger. Presence or absence of reasonable foresight is an essential part of the concept. One is charged with notice of what a reasonably and ordinarily prudent person would have foreseen and so must foresee what common experience tells may, in all likelihood, occur, and to anticipate and guard against what usually happens. On the other hand, one is not bound to anticipate every possible injury that may occur or every possible eventuality. * * * The standard of care to be used in measuring contributory negligence is the conduct of an ordinarily prudent person under the same or similar circumstances, and not that of a very cautious person, and even if the doing of what was done turns out to have been an error of judgment, this of itself does not make the act negligent if an ordinarily prudent person would have made what proves to have been the same error." In *Strauss v. United Rwys. Co.,* 101 Md. 497, *supra,* this observation is made of the passenger who stood up at the edge of the car: "Again, what danger then existed, against which,

by the exercise of ordinary care he ought to have guarded himself. He should not be required to [predict] danger, unless there was something in the situation known to him, or which he could have known by the exercise of reasonable care, from which he was, or ought to have been warned of his peril. Here it seems, he stood up at the time the speed of the car was about to be increased. He should have known that when that happened certain irregularities of motion would be experienced. It cannot be doubted that he was reasonably prudent in taking an upright position as against the usual expected increase of speed. But the only evidence is that the lurch of the car was 'sudden, unexpected and unusual.' If the appellant was in a proper position, it would not be negligent that he did not anticipate the unusual violence of the lurch." See to the same effect *United Rwys. Co. v. Riley*, 109 Md. 327, 339, *Baur v. Calic*, 166 Md. 387, 397, and *Richardson v. State*, 203 Md. 426, all *supra*. We think the question of the appellee's negligence was properly for the jury.

The Court directed the jury's attention to the boulevard stop law and instructed them that McMechen Street at its intersection with Linden Avenue is a through highway. He told them that there are two corollary duties on the driver on the unfavored highway: (1) to come to a complete stop before entering the boulevard, and (2) to yield the right of way to all vehicles travelling on said boulevard, as well as that the driver on the boulevard is entitled to assume that the driver on the intersecting street will stop and yield the right of way. He then said: "Whether the vehicle did stop or did not stop is for you to decide" and told the jury they must decide "* * * whether or not the taxicab at the time and immediately before the accident complained of in this case was on the boulevard or was not on the boulevard * * *." He then immediately instructed the jury: "* * * that a driver approaching an intersection intending to turn to the left must approach that intersection in the right half of the roadway that he is on nearest the center line, must give the proper hand signal showing his intention and must not turn his vehicle from a direct course until it is reasonably safe to

do so, and if you find that the cab driver * * * failed to comply with any of these requirements and that such failure caused or contributed to the accident then you may consider such failure as an act of negligence in your consideration of the case." The charge then continued: "That between drivers entering into an intersection from opposite directions, as was the case in this particular situation, on the same street, the driver intending to make a left turn must yield the right of way to the driver pursuing a straight course but each party must use due care under all of the circumstances." The court then said: "I am going to give you that again:" and repeated the instruction last quoted.

We think that the court's charge instructed the jury correctly as to the applicable law. There was evidence permitting a finding that the cab had substantially completed its turn and was prepared to drive west on McMechen Street before the street car entered the boulevard. This being so, we think the boulevard law was relevant and that it was not only appropriate but necessary that the jury be instructed as to its meaning and effect. There was also evidence that the street car and the taxicab had stopped at the north and south sides of McMechen Street respectively and had entered the intersection more or less simultaneously, and therefore it was necessary for the court to instruct the jury as to the obligation of a driver entering an intersection, with the intention of making a left hand turn, to yield the right of way to a driver pursuing a straight course. The law reflected in one or the other of the instructions controlled the case, depending upon the facts as the jury found them. We see no prejudicial error in the charge.

*Judgments affirmed, with costs.*