BALTIMORE TRANSIT COMPANY AND
PENNY *v.* PUE, ET AL.

[No. 389, September Term, 1965.]

*Decided June 24, 1966.*

The cause was argued before HAMMOND, MARBURY, OPPEN-HEIMER and BARNES, JJ., and EVANS, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*Gerald N. Klauber* for appellants.

*Robert J. Thieblot,* with whom were *Leo A. Hughes, Jr.,* and *Allen, Thieblot & Hughes* on the brief, for Isabel H. Pue, one of appellees; and by *William M. Nickerson,* with whom were *Due, Whiteford, Taylor & Preston* on the brief, for Commissioner of Motor Vehicles, other appellee.

HAMMOND, J., delivered the opinion of the Court.

The appeal is by a bus driver for the Baltimore Transit Company and the company from judgments on a verdict of a jury awarding damages to a passenger who fell while on a bus.

Miss Isabel H. Pue, a maiden lady in her seventies and a graduate nurse then still actively pursuing her vocation, who was heading home in the middle of the day after leaving Keswick where she had been nursing her invalid sister, boarded a bus eastbound on Fortieth Street in front of the Maryland Casualty Company building, a long block from the intersection of Fortieth Street and Keswick Road. She paid her fare and moved toward the rear part of the long seat behind the driver, intending to sit there. As she was about to sit down she was almost facing the rear of the bus when she felt a sudden jerk, a "twirling" motion, which threw her feet right out from under her and she was thrown flat on her back—as she put it, she fell "right straight back" and "went over backward." She had ridden busses very frequently and had never before experienced the sensations or the consequences she described. She was seriously injured.

Her lawyers had investigated the occurrence and discovered that the bus driver attributed Miss Pue's fall to a sudden stop he was caused to make when an automobile bound west on Fortieth Street turned in front of him to go south on Keswick Road and that he had not identified the automobile which continued on down Keswick Road and has not since been found or reappeared. Armed with this knowledge, Miss Pue sued the bus driver, the Transit Company and the Commissioner of Motor Vehicles under the Unsatisfied Claim and Judgment Fund Law.

At the trial of the case, Miss Pue, in addition to detailing the matters above set forth as to the manner of her fall and its results, testified that the bus driver, soon after she fell, told

her that he had to "swirl around quick" to avoid an automobile or he "would have killed a man and broken up the machine."

The bus driver, called as an adverse witness, testified that as he drove east on Fortieth Street from the Maryland Casualty Company stop at which he picked up Miss Pue (which he thought was "close to two blocks" from Keswick Road) at a speed he estimated at twenty-five miles an hour, there was no vehicular traffic in the vicinity except the "one car coming the other way," and that he did not see the other car until it had begun its turn when it was already in the eastbound lane of Fortieth Street and the northbound lane of Keswick Road in the process of turning south. He never saw the car in its "proper lane," that is, the westbound lane, because as he approached Keswick Road he was centering all his attention on the traffic light which controlled the intersection of Keswick Road and Fortieth Street "to see if it was going to stay green." When he took his eyes down from the light he saw the other car turning in front of him and then all he had time to do was to "hit the brakes." He almost hit the car as well as the brakes—came within a "couple of feet"—but managed to stop without doing so in the middle of the intersection. When he was asked if the stop had been sudden, he replied "not real sudden," although he admitted that in his deposition he had said he had had to make "a sudden stop."

The Transit Company produced no evidence and the only other witness on liability was called by the Commissioner. He was another Transit Company bus driver who was a passenger on the bus with Miss Pue. He said he thought the stop at Keswick Road was a normal stop.

The appellants argue earnestly that they were not legally liable and their motions for directed verdicts and subsequently for judgments n. o. v. should have been granted because the testimony (a) was legally insufficient to permit a finding of negligence on their part in that it showed that the driver of the phantom car was guilty of a clear, prominent and decisive act of negligence which was the sole proximate cause of the occurrence, and (b) otherwise amounted to no more than mere adjectival allegations and characterizations too lacking in factual basis to support legally the claim of the plaintiff

We think the determination of the negligence of the appellants properly was left to the jury and that there was no reason to disturb its verdicts. This case differs from *Jones v. Baltimore Transit Co.,* 211 Md. 423, and the analogous cases discussed in the opinion in that case, including *Koester Bakery Co. v. Poller, Etc.,* 187 Md. 324, on which appellants rely. There the plaintiff herself testified that the bus was going "a little too fast" (another witness said "very, very fast") and that an automobile going in the same direction as the bus cut suddenly into the bus's lane in front of it near a corner and caused a very sudden stop which injured her. It was held (a) that a plaintiff in a negligence action bears the burden of showing that it was the negligence of the defendant that caused the harm complained of without also disclosing the intervention of an independent cause—a superseding, not a concurrent and contributing cause—which itself is the natural and logical cause of the harm; (b) that negligence of the Transit Company was not to be inferred from the adjectival characterizations of speed as "fast" and the stop as "sudden"; and (c) that if it were assumed that there was evidence of excessive speed of the bus, nevertheless the proximate cause of the accident was clearly and decisively the unexpected violation of the rules of the road by the automobile which would have required a sudden stop by the moving bus regardless of its speed and that it could be "only speculation that the greater speed of the bus, assuming that there was such speed, intensified the results and the injury that followed the sudden stop materially beyond what they would have been if the stop had been from a slower speed."

Here the testimony of the bus driver was that his view of Fortieth Street was clear and unobstructed for a long distance but that he did not see the intervening automobile—which obviously would have been apparent had he looked—until it was turning half a bus length in front of him because his eyes were exclusively on the traffic light to see if it was going to turn red. Even with this inattention he was able to stop his bus in the middle of the intersection in half its length from a speed of twenty-five miles an hour. The jury permissibly could have found that a concurrent and contributing cause of the sudden stop the bus driver was required to make was his failure to keep

a proper lookout and that if he had he could have seen the intervening motor vehicle and its probable course of travel at a point where, in words of the trial judge's charge to the jury, "the distance between such vehicle and his bus would have permitted him to make an ordinary and not an emergency stop," despite its careless and unlawful maneuver in cutting the corner dangerously close to the oncoming bus. Indeed it is reasonable to suppose that had the bus driver been looking as he should have been he could have safely guided the bus to the left of the automobile, since there was no other traffic on the streets, and avoided a stop.

This Court has found or rejected negligence in the operation, usually the starting or stopping, of a bus or trolley car depending on whether the motion or movement which resulted in harm was unusual or extraordinary or usual in and incident to normal operation, since irregular motions are to be anticipated in the ordinary course of mass transportation and motions that are no more than irregular are not evidence that the carrier has breached its duty to exercise the highest degree of care consistent with the nature of its undertaking. Recovery is denied usually in cases where the testimony has been no more than characterizations by witnesses that the motion of the vehicle was extraordinary or violent, with no fact or inference of fact to support the characterization. See *Balto. Transit Co. v. Sun Cab Co.*, 210 Md. 555, a case which found independent evidence supporting the characterizations, and similar cases therein discussed, and *Retkowsky v. Balto. Transit Co.*, 222 Md. 433, a case of characterization testimony only.

We think the present case falls on the *Sun Cab* side of the line. In addition to Miss Pue's statements that there was a sudden jerk and a "twirling" motion (and her testimony that in her long and frequent use of busses she had never before experienced a stop or motion like that which felled her), there was the driver's description of the emergency he found confronting him because he had not kept a proper lookout, his admission to her that he "swirled" the bus because if he had not he would have killed the driver of the automobile, as well as Miss Pue's fall flat on her back from a standing position, with such force that the driver said he heard her hit the floor and her descrip-

tion of the cause of the fall—that her feet were thrown out from under her, and the fact that the driver, on his own testimony, stopped the bus in the middle of the intersection from a speed of twenty-five miles an hour within a distance of half the length of the bus. These facts and statements, taken together, properly permitted the jury to draw the legitimate conclusion that the stop of the bus had been unusual, extraordinary and violent.

The appellants' final contention is that Judge Byrnes erred to their prejudice in not instructing the jury, as they requested that he do, that if they found that the plaintiff's failure to use the handgrips, stanchions, handles and like safety devices provided in the bus to protect herself caused or contributed to the accident, their verdict must be for the defendants. There are two simple answers. There was no testimony that there were any such devices in the bus and an instruction not resting on evidence in the case would have been an improper abstraction, *Cohen v. Engel,* 229 Md. 87, 90, and *Schaefer v. Publix Parking,* 226 Md. 150, 153, and Judge Byrnes did instruct the jury that certain irregular movements are to be expected in the operation of vehicles of a common carrier and that, to be entitled to recover. Miss Pue must be free of any negligence which directly caused or contributed to the accident, which in our view, was a sufficient instruction on the point under the evidence in the case.

*Judgments affirmed, with costs.*