COMMISSIONER OF MOTOR VEHICLES *v.* THE BALTIMORE & ANNAPOLIS RAILROAD COMPANY, ET AL.

\* \* \*

THALHEIMER *v.* THE BALTIMORE & ANNAPOLIS RAILROAD COMPANY, ET AL.

[No. 299, September Term, 1969.]

*Decided April 6, 1970.*

530

The cause was argued before HAMMOND, C. J., and McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Douglas R. Due* for Commissioner of Motor Vehicles, one of appellants; *Martin Moncarz* for Edwin J. Thalheimer, other appellant.

*Robert B. Barnhouse*, with whom were *Piper & Marbury* on the brief, for The Baltimore & Annapolis Railroad Company, et al., appellees.

HAMMOND, C. J., delivered the opinion of the Court.

Thalheimer, a plaintiff below, who was injured when he fell to the floor of a bus, appeals from judgments in favor of the owner and the driver of the bus following directed verdicts at the close of the plaintiff's case. A phantom car was said by the bus driver to have been involved and the jury found for Thalheimer in his suit against the Commissioner of Motor Vehicles. The Commissioner joins Thalheimer in appealing from the judgments in favor of the owner and operator of the bus but does not seriously challenge the jury's finding that he was liable.

The bus, a carrier for hire, was on a regular run and Thalheimer was a regular passenger. After it had discharged passengers at the lower level of the Terminal Building at Friendship Airport and begun its journey on what is referred to as Lower Road towards its next stop, Thalheimer started to walk from a rear seat to a front seat. The bus stopped at the stop sign facing Lower Road. Just beyond that point Lower Road, Upper Road (which runs in front of the upper entrance to the Terminal Building over Lower Road) and Service Road (which runs by the International Building and to the freight area) all merge. Upper Road comes down grade to the right of Lower Road and Service Road is to the right of Upper Road. Lower and Upper Roads are one-way, Service Road is a two-way road, and remains so after the other two fully merge into it.

Seeing no traffic ahead or to the right, the bus driver started up. After he had gone about forty feet, he says a small white-topped foreign car cut sharply in front of

the bus from the left. The driver stopped the bus in time to avoid contact, the car kept on going, and Thalheimer fell to the floor of the bus.

Traffic coming down Upper Road is faced by a "Yield" sign and beyond the sign goes tangentially right until it straightens out on the northbound lane of Service Road. Traffic on Lower Road does likewise. Traffic on both roads is directed into Service Road by arrows painted on the merging area beyond the end of those two roads. Once on Service Road, traffic can proceed onto Elm Road (an extension of Service Road) and out of the Airport.

To the left of the bus as it sat at the stop sign at the end of Lower Road, there was a parking lot enclosed by a wire fence. Some distance beyond the end of Lower Road, and apparently not visible from the end of Lower Road, is Cedar Road, which at that time was used as an entrance to the parking lot on the left. While Cedar Road apparently was not designed as an exit from the parking lot, the airport authorities had provided for the contingency that a potential parker would find the lot closed and have to turn around and exit by installing a stop sign at the end of Cedar Road and its intersection with the merging area and signs directing a vehicle exiting therefrom to proceed in the proper direction away from the merging area.

All the evidence in the case was produced by the plaintiff. The only eyewitness was the bus driver, an adverse witness, whose deposition was read into evidence. He stated that as the bus sat at the stop sign at the end of Lower Road, he looked to his right and straight ahead to see if traffic was sufficiently clear to permit him to merge. He did not look to his left—to do so would have been "unnatural." Seeing that traffic was clear, he pulled forward into the merging area. After proceeding approximately forty feet, he heard the sound of a car's muffler, or motor, which "could have been off to the [left] side." He simultaneously looked to the left and downward, saw the car "flash in his eye" directly in front of the bus, and "dynamited" his brakes. The car then

continued out of the Airport. The bus came to a stop directly in front of Cedar Road. The driver first stated that the car had come from Cedar Road, but later indicated that it also may have come out of Lower Road and around the left side of the bus.

The other witnesses produced by the plaintiff were the plaintiff himself and the captain of the Airport police, who testified regarding the roads involved.

We think the trial judge correctly directed verdicts for the owner and driver of the bus. The plaintiff in a negligence action bears the burden of establishing that it was the negligence of the defendant which caused his injuries without disclosing the intervention of any independent factor which caused those injuries. *Jones v. Baltimore Transit Co.*, 211 Md. 423, 426. A passenger on a bus who is injured as the result of a stop of the bus establishes an inference that the stop was due to negligence of the driver where he shows that the stop was extraordinarily sudden or violent (so long as in doing so there are not shown other circumstances, besides such negligence, which necessitated the stop). *Kaufman v. Baltimore Transit Co.*, 197 Md. 141, 146. It is, however, well settled in this State that a passenger on a bus or other common carrier who bases a negligence action on the sudden stop of the carrier cannot establish a case "merely by adjectival descriptions of the nature of the stop," but rather must show in addition some "definite, factual incident" created by the stop which shows it to be so abnormal and extraordinary that it can be legally found to have constituted negligence in operation. *Retkowsky v. Baltimore Transit Co.*, 222 Md. 433, 438.[1]

---

1. Examples of cases in which such a "definite, factual incident" has been found to have been shown are Baltimore Transit Co. v. Sun Cab Co., 210 Md. 555, 562 ("rocking, swaying or jiggling of the streetcar that threw the other passengers back and forth") ; Baltimore Transit Co. v. Pue, 243 Md. 256, 261-262 ("[the plaintiff fell] flat on her back from a standing position, with such force that the driver said he heard her hit the floor"; "the driver, on his own testimony, stopped the bus in the middle of the intersection from a speed of twenty-five miles an hour within a distance of half the length of the bus") ; Kaufman v. Baltimore Transit Co., 197 Md. 141, 146 (dicta—seated passenger hurled

An examination of the record in the case at bar indicates that no such "definite factual incident" was shown by the plaintiff. The bus driver described the stop and its surrounding circumstances variously as "quick"; "a dynamite stop" ("a quick stop would be what they call a dynamite stop") ; "I hit the brakes and heard a sound of a thud. There he was laying beside me;" "[I] heard the noise [of the car's muffler] and saw the top of that car right on me. That is why I had to dynamite my brakes to stop;" "I dynamited and looked at the same time." The plaintiff said "he slammed his brakes;" "I'd just started to get up and as I started he slammed his brakes, I was holdin' on to the seat like this, and I was reachin' for the front;" "the way he threw his brakes on I thought I was goin' to go out the window." He further stated that neither of the two other passengers who were on the bus at the time fell off their seats or showed other signs of disturbance, and that no packages or other things were thrown around.

The only part of this testimony which might be considered a "definite factual incident" as opposed to mere "adjectival description" is the fact that the driver testified that he heard the plaintiff fall with a "thud." We find that such characterization standing alone is not one which necessarily is indicative of abnormality in the stop and thus not one which will permit the inference that the stop legally constituted negligence. Such a "thud" could be produced by any fall, violent or otherwise, particularly when the passenger fell at a point directly behind the driver.

However, even assuming that the plaintiff sufficiently proved the abnormality and negligence of the stop, there are other facts and circumstances which prevent the inference that the stop was due to the negligence of the driver. *Kaufman v. Baltimore Transit Co., supra.* Reasonable minds would not disagree that a driver who is

---

from his seat against the seat in front of him) ; United Railways & Elect. Co. v. Phillips, 129 Md. 328, 331 ("such a violent jerk that it caused the passengers to scream").

confronted with the sudden appearance of another vehicle directly in front of him acts as a reasonably prudent man by stopping as quickly as possible.

The appellants argue that this was an emergency which the driver himself created, since by his own testimony he admitted that he did not look to the left either prior to or during his exit from Lower Road into the merger area. From this they draw the inference of negligence sufficient to take the case to the jury, saying that had the driver looked he would have seen the car in time to bring the bus to a comfortable stop. The photographs in the record make it clear that upon stopping at the end of Lower Road the reasonable driver would be expected to look only forward and from that point the exit from Cedar Road is not even visible, if the car came from that point. Once the driver begins his exit from Lower Road into the merging area, his attention is naturally directed to the front and the right so that he may successfully avoid traffic both ways on Service Road and that going his way on Upper Road.

Again, if it be assumed that the driver's failure to look to the left might constitute negligence, that negligence was not the proximate cause of the plaintiff's injuries here. The sudden entry into the direct path of the bus described by the bus driver was an intervening superseding cause of the harm to Thalheimer. Even if the driver of the bus had looked to his left and seen the phantom car—either behind him, beside him, or at the end of Cedar Road (which are the only possible positions of the car under the testimony produced by the plaintiff) —he clearly was not bound to anticipate that the car would suddenly pull directly into his path. *Jones v. Baltimore Transit Co.*, 211 Md. 423; *Baltimore Transit Co. v. O'Donovan*, 197 Md. 274; *Oliver v. Baltimore Transit Co.*, 247 Md. 625.

In *Jones* it was held that a verdict was properly directed for the Transit Co. in an action for injuries resulting from a sudden stop necessitated by a car, going in the same direction as the bus, suddenly cutting in

front of the bus. The plaintiff contended that excessive speed of the bus was a concurrent cause of her injuries. We said (at p. 429 of 211 Md.) :

> "Appellant's own testimony shows that the sudden stop of the bus was required by a car suddenly cutting in front of the bus. There was, of course, no contradiction of this evidence. * * * The cause of the accident clearly was the unexpected and unforeseeable action of the automobile that violated the rules of the road by invading the lane of the bus."

Similarly, in *O'Donovan* it was held that a verdict should have been directed for the Transit Co., in an action for injuries resulting from the bus's collision with a disabled automobile at an intersection when the car, in violation of the boulevard rule, pulled into the bus's path. The plaintiff argued that the driver failed to maintain a proper lookout. Judge (later Chief Judge) Henderson said for the Court (at pp. 278-279 of 197 Md.) :

> "In the instant case we think the bus driver had the right to assume that the other vehicle, in a place of safety by the grass plot, would remain there and yield the right of way. We find no merit in the contention that the bus driver was at fault in failing to observe the automobile when it made its initial stop by the stop sign, nearly 100 feet from the point of impact. * * *
>
> "The chief contention is that the bus driver failed to stop 'when it was, or should have been, apparent to him that the automobile was standing disabled ahead of him.' * * *
>
> "* * * Taking [the automobile driver's] testimony in its most favorable light, his car stopped, with its whole length blocking the eastbound lane a matter of seconds before impact. * * * But whether it could have been stopped sooner or not, the proximate cause of the plain-

tiff's injury was the unexpected intrusion into or blocking of the eastbound lane by the [automobile]. It was not negligence for the bus driver to make an emergency stop under the circumstances."

The appellants find solace in *Baltimore Transit Co. v. Pue*, 243 Md. 256, where it was found that the jury could have found that a concurring and contributing cause of the sudden stop at an intersection made by the bus driver was his failure to maintain a proper lookout. If in the case at bar the phantom car came from behind or beside the bus, *Pue* is distinguishable from *Jones* and the case at bar, in that in *Pue* the car which was coming west on 40th Street as the bus was coming east turned in front of the bus, necessitating the sudden stop, and had to have been seen had the bus driver looked at the road instead of the traffic light at the intersection. The bus driver in *Pue* never saw the car in its proper lane since his attention was centered exclusively on the traffic light he was approaching. He saw the car turning directly in front of him at the intersection just in time to avoid hitting it.

If, on the other hand, the phantom car in the case at bar emerged from Cedar Road, *Pue* is distinguishable from *O'Donovan* and the case at bar in that the boulevard rule did not apply to the *Pue* situation. *Tates v. Toney,* 231 Md. 9.

These reasons persuade us that verdicts were properly directed for the appellees.

*Judgments affirmed, with costs.*