## WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellant,

v.

### Yvonne BELL, Appellee.

### No. 92–CV–587.

District of Columbia Court of Appeals.

Argued Sept. 14, 1993.

Decided Oct. 21, 1993.

Bruce P. Heppen, with whom Robert L. Polk, Robert J. Kniaz, Arnold I. Melnick, and Gerard J. Stief, Washington, DC, were on the brief, for appellant.

Gary L. Segal, Rockville, MD, for appellee.

Before ROGERS, Chief Judge, and SCHWELB and KING, Associate Judges.

KING, Associate Judge:

Washington Metropolitan Area Transit Authority (WMATA), defendant in the trial court, appeals an adverse judgment claiming the trial court erred in denying its motion for a directed verdict. We conclude, applying Maryland law, that the evidence at trial was legally insufficient to establish negligence, and thus the case should not have been submitted to the jury. Accordingly, we reverse.

### I.

On the morning of July 31, 1989, appellee, plaintiff in the trial court, boarded a metrobus in New Carrollton, Maryland, traveling to Fairmont Heights, Maryland. She sat down in a seat on the right-hand side of the bus, sitting next to the window, and began to read. Approximately eight other passengers were on the bus, but none were sitting on the seat with appellee. Appellee testified that shortly after she sat down, the bus driver "made a real sharp turn and when he made the turn I was sitting on my right side facing the window and some way or another when he made the turn I ended up on my left side, on the left side of the bus." Her pocketbook that had been on her lap fell to the floor

when the bus made the sharp turn. Appellee had ridden on a bus "hundreds of times," and in particular had ridden a bus on this route for a couple of weeks, but had never before experienced "the kind of force which pushed [her] out of [her] seat" that day. She also testified that no other bus passengers were hurt. There was medical testimony that there were no broken bones; however, appellee complained of injuries to her back, neck, right shoulder, and right hand and wrist.

Only one other passenger appeared as a witness. Ms. Vanessa McDonald, who was called by the plaintiff, testified that she was sitting on the left-hand side of the bus and that appellee was sitting in a seat in front of her on the right-hand side of the bus. McDonald testified that when the bus made the turn: "I just might have heard a squeak or something and I might have jumped, jerked or something and that was it." After that occurred, McDonald observed appellee sitting in her seat on the right-hand side of the bus, leaning over and complaining that she was in pain. McDonald was looking straight ahead when the bus made the turn, and appellee was in her line of sight. McDonald did not, however, see appellee fall. McDonald helped appellee pick up her purse and some items that had fallen out of it.

When asked if she remembered "being pushed up against the side of the bus from the turn," McDonald responded "[n]ot really." She did not recall that anyone else fell and did not hear anyone mention to the bus driver that he or she had fallen.

The driver of the bus testified that the corner in question was "somewhat of a sharp turn." He had driven that particular bus route over a hundred times. He remembered making the turn at which appellee allegedly fell, and did not observe anyone fall, nor did he receive complaints from any other passengers that they had been injured or affected by the turn.

At the close of the plaintiff's case, WMATA moved for a directed verdict. WMATA

argued that the only testimony regarding alleged negligence of the defendant was given by the plaintiff: "She said the bus made a sharp turn period. That's the only testimony of anything that the bus driver supposedly did wrong." Pointing to appellee's testimony that in all her experience she had never encountered a force greater than that which she experienced on the day of her alleged injury, the trial court denied the motion. After the defense rested, WMATA renewed its motion for a directed verdict. The court again denied the motion and the jury returned a verdict in favor of appellee in the amount of $60,000.[1]

## II.

In reviewing the grant or denial of a motion for directed verdict, this court, like the trial court, must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *District of Columbia v. Cassidy*, 465 A.2d 395, 397 (D.C.1983); *Papanicolas v. Group Hospitalization, Inc.*, 434 A.2d 403, 404 (D.C.1981).[2] "While normally the jury is the trier of fact, a trial court may 'remove from jury consideration those cases in which the facts, viewed most favorably to the nonmoving party, permit but one reasonable conclusion as to the proper judgment.'" *Cassidy, supra*, 465 A.2d at 397 (citations omitted). We conclude, applying Maryland law, that the evidence was not sufficient to support a cause of action in negligence and, therefore, the motion for directed verdict should have been granted.

Although the parties agreed at trial that Maryland substantive law applied, WMATA did not cite in the trial court, when it made its motions for directed verdict, any of the Maryland cases that it relies upon in this appeal. Thus, WMATA did not present to the trial judge, as it has to this court, the applicable case authority necessary to determine the legal issue presented. Instead WMATA relied upon two District of Columbia cases, which it now concedes are not

---

1. WMATA did not move for judgment notwithstanding the verdict.

2. The parties agree that Maryland law applies to this case. The laws of the forum, however, apply

to matters of procedure. *Byrd v. Allstate Insurance Co.*, 622 A.2d 691, 693 n. 2 (D.C.1993) (citing *Fowler v. A & A Co.*, 262 A.2d 344, 347 (D.C.1970)).

binding.[3] At oral argument before this court, counsel for WMATA acknowledged that under District law pursuant to *Boyko v. WMATA,* 468 A.2d 582 (D.C.1983), it would probably not prevail on a motion for directed verdict on the facts presented here. We take no position on the question whether the result reached in this case would be different under District law, and emphasize that our decision is based upon our interpretation of the applicable Maryland law.

■ To establish negligence, under Maryland law, a plaintiff must prove: "(1) a duty or obligation which the defendant is under to protect the plaintiff from injury; (2) breach of that duty; and (3) actual loss or injury to the plaintiff proximately resulting from the breach." *Willow Tree Learning Ctr., Inc. v. Prince Georges County,* 85 Md.App. 508, 584 A.2d 157, 159 (1991) (citations omitted). Here, appellee failed to show any act or omission on the part of the bus driver amounting to a breach of the duty to exercise due care to protect appellee from harm.

The Maryland courts have repeatedly held that "a passenger on a bus or other common carrier who bases a negligence action on the sudden stop[4] of the carrier cannot establish a case 'merely by adjectival descriptions of the nature of the stop,' but rather must show in addition some 'definite, factual incident' created by the stop which shows it to be so abnormal and extraordinary that it can be legally found to have constituted negligence in operation." *Comm'r of Motor Vehicles v. Baltimore & A.R.R.,* 257 Md. 529, 263 A.2d 592, 594 (1970) (citing *Retkowsky v. Baltimore Transit Co.,* 222 Md. 433, 160 A.2d 791 (1960)); *see also Baltimore Transit Co. v. Pue,* 243 Md. 256, 220 A.2d 551, 554 (1966) ("Recovery is denied usually in cases where the testimony has been no more than characterizations by witnesses that the motion of

the vehicle was extraordinary or violent, with no fact or inference of fact to support the characterization."). In this case, appellee's evidence consisted of nothing more than "adjectival description" of the manner in which the bus turned and the injuries she sustained as a result of the turn. Her evidence consisted entirely of her own testimony that the bus made a sharp turn causing her to slide across the seat, and that she had never experienced the type of force she felt that day, and another passenger's testimony that she "might have heard a squeak or something and [that she] might have jumped, jerked or something and that was it." No one observed appellee falling or colliding with any part of the bus. Moreover, the driver testified there were no unusual events surrounding the bus route that day, and no other passengers testified that they were in any way affected or injured by the alleged sharp turn. A review of the Maryland cases persuades us that the evidence presented was insufficient to permit a cause of action based on negligence to be submitted to the jury.

In *Retkowsky, supra,* the Maryland Court of Appeals affirmed the trial court's directed verdict in favor of the defendant carrier. There, the plaintiff testified that after she boarded the streetcar, it "started with a 'very sudden jerk'" that knocked her down into a sitting position, thereby causing her injuries. *Id.,* 160 A.2d at 792. The plaintiff also testified that she had never experienced "a jerk" of that intensity in the thirty years she had been riding streetcars—testimony very much like that related by the plaintiff in this case in her description of the turn made by the bus. *Id.* Moreover, the defendant's two witnesses in *Retkowsky,* a passenger and the driver, testified that the streetcar did not make an unusual start after the plaintiff boarded—again, testimony similar to the description of the bus's turn provided by the

**3.** When arguing for a directed verdict at the close of plaintiff's case, WMATA's counsel remarked "[t]here's a whole line of cases that are D.C. cases on that *Wilkins v. D.C. Transit, Bessie Perry."* Presumably the latter is a reference to *District of Columbia Transit Sys., Inc. v. (Bessie) Perry,* 337 A.2d 224 (D.C.1975).

**4.** Most of the carrier cases involve an injury to a passenger as the result of a sudden stop or a sudden start by a bus (or, in the earlier cases, a

streetcar). For the purpose of determining the evidence necessary to withstand a directed verdict, we see no difference between the cases where the alleged injury resulted from a sudden stop or start and a case, such as this, where the alleged injury resulted from a sharp turn made by a bus. The parties in their briefs apparently agree since both rely on cases involving sudden stops or sudden starts.

driver and the passenger in this case. *Id.* at 793. On those facts the *Retkowsky* court found that, other than the plaintiff's adjectival descriptions of the manner in which the streetcar started, there was no "definite, factual incident which rendered the start so abnormal and extraordinary that it can be legally found to have constituted negligence in the operation of the streetcar." *Id.* (internal quotations omitted). Thus, the court ruled that the trial court had properly directed a verdict for the carrier.

In reaching that conclusion, the court emphasized that there was no showing of an unusual effect upon any other person on the streetcar. For example, there were no spontaneous exclamations of excitement made by other passengers. *Id.* The *Retkowsky* court also found support in the absence of damage to the streetcar or the bag plaintiff was carrying, and plaintiff's failure to show that she was thrown or propelled any unusual distance when she fell. *Id.* at 793–94. Similarly in the present case, there was no showing that other passengers were adversely affected by the bus turning or that they made any exclamations at the time of the turn. There was also no evidence of damage to the bus or to appellee's belongings.

Appellee did testify that the turn took her from one side of the bus to the other. In *Retkowsky*, the court suggested that a plaintiff could meet its burden of showing an "unusual or extraordinary effect" by establishing the fall was one of an "unusual distance." *Id.* at 793–94. We find nothing in any of the Maryland cases, and appellee has cited us to none, to suggest the movement by appellee here met that standard. Indeed the authority is to the contrary. In *Kaufman v. Baltimore Transit Co.*, 197 Md. 141, 78 A.2d 464, 467 (1951), a jolt was so severe that a passenger standing in a crowded streetcar was thrown a distance of four feet and onto the lap of a seated passenger who was injured by the falling passenger. The court concluded that was not sufficient corroboration. Furthermore, in this case, there was no medical evidence suggesting that the inju-

ries were of such a nature that they must have been caused by a collision of great force.[5] In fact one of appellee's doctors testified that very little in the way of force was necessary to cause the wrist injury. In short, we conclude that there is no basis in Maryland law for holding that appellee's movement across the seat was sufficient, when coupled with appellee's adjectival description of the turn, to form the basis for a cause of action in negligence without further evidence of either a breach by the driver of the duty to exercise care, or some other corroboration in the form of a "definite, factual incident" created by the turn.

On this record we find neither a breach of duty nor any factual incident corroboration. If anything, the evidence is to the contrary. For example, the passenger McDonald, who was called as a plaintiff's witness, testified that appellee was in her line of sight at the time the bus made the turn, but that she did not observe appellee fall. McDonald also testified that immediately after the bus made its turn she observed that appellee was *sitting* in her seat on the right-hand side of the bus. There is no explanation how appellee, who was sitting on the right-hand side of the bus before the turn, could slide to the left-hand side of the bus and injure herself, and then make her way back to a sitting position in her seat on the right-hand of the bus without anyone having seen her move, particularly the passenger McDonald in the seat behind who had a clear view of the area where appellee claims she moved. Nor was there so much as a scintilla of evidence that anyone else on the bus was affected by the turn—a significant factor relied upon by the court when it upheld the grant of a directed verdict in *Kaufman*. *Id.*, 78 A.2d at 468. Furthermore, McDonald, who was sitting on the left-hand side of the bus, was not herself physically affected by the turn—a fact inconsistent with a turn of such force as to be "abnormal and extraordinary." In sum, appellee's evidence did not reveal that the turn made by the bus was "so abnormal and extraordinary that it can be legally found to have constituted negligence in the operation

---

**5.** *Cf. Boyko, supra,* 468 A.2d at 585 (treating physician's testimony that " 'it would take a considerable amount of violence' " to cause the par-

ticular injury suffered, suggests that movement of bus was inconsistent with normal operations).

of the [bus]." *Retkowsky, supra,* 160 A.2d at 793 (internal quotations omitted).

We find further support in *Comm'r of Motor Vehicles v. Baltimore & A.R.R., supra,* 263 A.2d 592, which affirmed directed verdicts for the owner and driver of the bus. There the driver of the bus had testified that, in order to avoid hitting a car, he made a "quick" or "dynamite stop," after which he heard a "thud" and then saw the plaintiff lying beside him. *Id.* at 595. The plaintiff also testified that the driver "slammed his brakes." *Id.* The court found that the only part of the plaintiff's case that "might be considered a 'definite factual incident' as opposed to mere 'adjectival description' " was the driver's testimony that he heard a "thud." *Id.* The court concluded, nevertheless, that such testimony did not permit an inference of negligence because the thud could have been produced by any fall, violent or otherwise. Similarly, in the present case there are no factual incidents from which to infer negligence, except McDonald's testimony that the bus might have squeaked or jerked, and that she observed appellee sitting down and complaining about pain. There is nothing to show, however, that a squeak or jerk is such an unusual occurrence that it will support an inference that the bus driver was negligent.

The cases relied upon by appellee are distinguishable because in each, in addition to evidence relating to a sudden jerk or stop, there was independent evidence of the transit driver's negligence. Thus, in *Charlton Brothers Transportation Co. v. Garrettson,* 188 Md. 85, 51 A.2d 642 (1947), plaintiff, who was sitting on a seat in a streetcar, was thrown up and over the seat in front of him when the streetcar came to a sudden stop. The force propelling the passenger was caused by the streetcar colliding with a truck, a factor not present in this case. Moreover, there was evidence that the operator was driving at an excessive speed and was being inattentive. Similarly, in *Baltimore Transit Co. v. Sun Cab Co.,* 210 Md. 555, 124 A.2d 567 (1955) the operator failed to bring the streetcar to a full stop as required. Finally, in *Baltimore Transit Co. v. Pue, supra,* 220 A.2d at 551, there was testi-

mony that the operator failed to keep a proper lookout. Thus, in each case relied upon by appellee, there was separate independent evidence of the transit operator's negligence—factors not present in the instant case.

We are convinced that, under Maryland law, appellee's evidence was insufficient to permit a cause of action based on negligence to be submitted to the jury. *See also Miller v. Mass Transit Admin.,* 18 Md.App. 220, 306 A.2d 261, 263 (1973) (mere statements that the bus started "rough like" or "like he was in a hurry" was not sufficient to establish negligence on the part of the operator), *aff'd,* 271 Md. 256, 315 A.2d 772 (1974); *District of Columbia Transit Sys., Inc. v. Perry,* 337 A.2d 224, 224–25 (D.C.1975) (where plaintiff's evidence consisted of her testimony that the bus caused her to fall when it " 'jerked' forward unusually fast," the trial court erred in submitting the case to the jury since there was no "meaningful evidence of how ' . . . much the movement of the bus deviated from a normal operation' ") (citation omitted); *Wiggins v. Capital Transit Co.,* 122 A.2d 117–19 (D.C.1956) (where plaintiff testified that the bus "started suddenly" and another witness testified that the bus started with a "little jerk," verdict was properly directed for defendant since there was an insufficient basis for a jury to conclude that the bus's start "was of such unusual violence as to be beyond common experience"). Appellee's evidence, which consisted of her adjectival description of the manner in which she fell, failed to establish negligence on the part of the bus driver. In short, appellee simply has not shown that the bus's turn which she claims caused her injury was "so abnormal and extraordinary that it can be legally found to have constituted negligence." *Baltimore & A.R.R., supra,* 263 A.2d at 594. Since there has been no showing of negligence, the case should not have been submitted to the jury.

### III.

Accordingly, we reverse and remand to the trial court with directions to enter judgment

for appellant.[5]

*Reversed and remanded.*

---

**5.** Appellant asks this court to enter judgment for WMATA. The proper course, however, is for this court to remand to the trial court with direction to enter judgment for appellant. *See Vuitch v. Furr,* 482 A.2d 811, 813 n. 2 (D.C.1984).