979 A.2d 194

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**

v.

**Donna DJAN.**

**No. 3018, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Aug. 28, 2009.

Nicholas L. Phucas (Carol B. O'Keeffe, General Counsel, Mark F. Sullivan, Gerald J. Stief, on brief), Washington, DC, for Appellant.

Justin G. Nunzio (Patrick J. Christmas, Patrick J. Christmas & Associates, PC, on brief), Silver Spring, for Appellee.

Panel: SALMON, MEREDITH, and ZARNOCH, JJ.

SALMON, J.

Donna Djan brought a negligence action against the Washington Metropolitan Area Transit Authority ("WMATA") in the Circuit Court for Prince George's County. She sought recompense for injuries she received while a passenger on a WMATA bus. The jury returned a verdict in favor of Ms. Djan and against WMATA in the amount of $25,714.40.

WMATA claims in this appeal that the trial judge erred in denying its motion for judgment notwithstanding the verdict. We agree with WMATA and shall reverse the judgment.[1]

## I.

On May 11, 2005, Ms. Djan, age 41, hailed a Metrobus near the intersection of East–West Highway and 23rd Avenue in Prince George's County. She was carrying a cube-shaped box (two-and-one-half feet by two-and-one-half feet) in size. The box, while not heavy, was awkward to carry and required her to use both hands to transport it. Because the passenger was carrying a box, the bus driver, Joseph Washington, lowered the steps to curb level so that Ms. Djan would not have to climb the steps.

Ms. Djan testified that she boarded the bus with no trouble and was heading for a seat so that she could set the box down and pay her fare when the bus "took off pretty fast. He [the bus driver] kind of gunned it." Later in her testimony, Ms. Djan and her counsel had the following brief exchange:

Q: And can you describe, I know you said pretty fast, but can you describe the manner in which the bus took off?

A: It jerked. It jerked me forward so I guess he gunned it, it was like a little hard. I don't know how to describe that, but it—

The jerk of the bus caused Ms. Djan to fall forward and for her left knee to hit a seat. Although she did not fall to the floor, she suffered a left knee injury as a result of the impact of her knee with the seat.

Ms. Djan further testified that she had felt jerks and jolts while riding the bus in the past, "but not to the point where it threw me in a seat."

During redirect examination, the following brief colloquy occurred:

---

1. WMATA also claims that the court erred in excluding the testimony of a witness. We need not decide that issue.

Q: Did you experience prior jerks on the bus?

A: Yes. I mean—

Q: How, was this in any way different?

A: Yes, because at this time I had no way of holding onto a railing. I wasn't in my seat so I had no way of holding myself without going straight into that seat.

At the close of Ms. Djan's case, WMATA made a motion for judgment on the basis that the plaintiff had failed to prove facts sufficient to sustain a negligence action. The trial judge reserved on the motion. At the close of all the evidence, WMATA renewed its motion for judgment, and the judge again reserved his ruling.

After the jury verdict, WMATA filed a timely motion for judgment notwithstanding the verdict, or, alternatively, a new trial. It argued that the evidence produced was not sufficient because Ms. Djan had failed to prove that the bus's movement was so abnormal and extraordinary that it constituted negligent operation. WMATA's post-trial motion was denied, and on February 25 WMATA filed this appeal.

## II.

## ANALYSIS

### A. Standard of Review

The standard of review applicable when a motion for judgment notwithstanding the verdict has been denied is the same standard applicable when a trial judge denies a motion for judgment made at the conclusion of the evidentiary phase of the trial, viz:

> On review of a motion for judgment in a civil negligence case, we ask whether on the evidence adduced, viewed in the light most favorable to the non-moving party, any reasonable trier of fact could find the elements of the tort by a preponderance of the evidence. *Lowery v. Smithsburg Emergency Medical Service*, 173 Md.App. 662, 920 A.2d 546 (2007); *Tate v. Bd. of Educ. of Prince George's County*, 155

Md.App. 536, 544, 843 A.2d 890 (2004). If there is even a slight amount of evidence that would support a finding by the trier of fact in favor of the plaintiff, the motion for judgment should be denied. *Lowery, supra,* 173 Md.App. at 683, 920 A.2d 546; *Tate, supra,* 155 Md.App. at 544, 843 A.2d 890.

*Waldt v. Univ. of Md. Medical System Corp.,* 181 Md.App. 217, 270, 956 A.2d 223 (2008). The facts summarized in Part I have been set forth in obedience to the standard just quoted.

## B. Discussion

 Under Maryland law, a common carrier owes its passengers the highest degree of care to provide safe means and methods of transportation for them. *Todd v. Mass Transit Admin.,* 373 Md. 149, 156, 816 A.2d 930 (2003). A common carrier, however, does not guarantee the safety of its passengers. *Id.*

 The driver of a common carrier is not required to wait for a passenger to sit down before starting unless the passenger has some obvious infirmity. This principle has been enunciated in numerous cases. *Mass Transit Admin. v. Miller,* 271 Md. 256, 315 A.2d 772 (1974) (*"Miller II"*), *quoting Miller v. Mass Transit Admin.,* 18 Md.App. 220, 225, 306 A.2d 261 (1973) (*"Miller I"*), is illustrative. In *Miller II,* 271 Md. at 262, 315 A.2d 772, the Court of Appeals said:

As Judge Davidson, for the Court of Special Appeals, aptly observed

... these cases are part of a long line of cases, too numerous to review here, which make it abundantly clear that once a passenger has planted both feet on a level portion of the floor of a vehicle sufficient in size to carry passengers in safety—be the place within or without the actual body of the car—he is in a place of safety and fairly on board. The duty is then his to see that he is not harmed by the normal movements of the car.

About a year prior to the *Miller II* decision, this Court said: "In Maryland, a bus driver is not required to wait until his

passengers are seated before starting the bus in operation, unless the passenger labors under some apparent infirmity or disability." *Carolina Coach Co. v. Bradley,* 17 Md.App. 51, 55, 299 A.2d 474 (1973). We then noted that the evidence in that case "showed only that the [plaintiff] was 57 years of age at the time of the accident; there is no suggestion that she manifested any physical infirmity of disability of which the driver should have been aware." *Id.*

In the subject case, Ms. Djan had boarded the Metrobus and was fully and fairly on board when the driver started the bus. She had no disability or infirmity.

Ms. Djan argues that since her hands were not free to grasp a pole or a seat to help her keep her balance when the bus started, the driver should have treated her as a handicapped passenger and waited for her to set her box down or seat herself before he started the bus. Furthermore, she argues that because the driver lowered the steps of the bus for her, he *did* view her as a handicapped passenger. She attempts to build on this last point by pointing out that WMATA's standard operating procedures require a Metrobus driver to ensure that elderly and disabled passengers are seated before the driver moves the bus.

Appellant's argument is invalid for two reasons. First, the undisputed facts were that Ms. Djan was neither disabled nor elderly. Second, as the Court of Appeals has stated, "We have long held that the custom and practice of a party, as distinguished from general custom and practice ... is not helpful in a determination of what constitutes reasonable care." *W. Md. Ry. Co. v. Griffis,* 253 Md. 643, 653, 253 A.2d 889 (1969). *See also Briggs v. WMATA,* 481 F.3d 839, 848 (2007) ("while internal regulations may be 'admissible as *bearing on the* standard of care,' admission at trial of the WMATA manuals alone would be insufficient") (*quoting Clark v. D. C.,* 708 A.2d 632, 635 (D.C.1997)).

When a passenger files a negligence claim against a motor carrier for injuries received when the carrier makes a

sudden start or stop, the passenger must prove that the movement was unusual or extraordinary. *Balt. Transit Co. v. Sun Cab Co.*, 210 Md. 555, 560, 124 A.2d 567 (1956). In regard to this element, the Court of Appeals said in *Comm'r of Motor Vehicles v. Balt. & Annapolis R.R. Co.*, 257 Md. 529, 533, 263 A.2d 592 (1970), *(quoting Retkowsky v. Balt. Transit Co.*, 222 Md. 433, 438, 160 A.2d 791 (1960)):

> It is ... well settled in this State that a passenger on a bus or other common carrier who bases a negligence action on the sudden stop of the carrier cannot establish a case "merely by adjectival descriptions of the nature of the stop," but rather must show in addition some "definite, factual incident" created by the stop which shows it to be so abnormal and extraordinary that it can be legally found to have constituted negligence in operation.

Cases in which the Court found circumstances amounting to a definite, factual incident include *Balt. Transit Co. v. Sun Cab Co.*, 210 Md. 555, 562, 124 A.2d 567 (1956) ("rocking, swaying, or jiggling of the streetcar that threw the other passengers back and forth"); *Balt. Transit Co. v. Pue*, 243 Md. 256, 261–62, 220 A.2d 551 (1966) ("[the plaintiff fell] flat on her back from a standing position, with such force that the driver said he heard her hit the floor"); and *United Rys. & Elec. Co. of Balt. Corp. v. Phillips*, 129 Md. 328, 331, 99 A. 355 (1916) ("such a violent jerk that it caused the passengers to scream").

The facts in *Retkowsky v. Balt. Transit Co., supra,* are similar to those in the case at hand. *Retkowsky* concerned a 66–year–old woman who was injured when the streetcar she had just boarded made a sudden start. 222 Md. at 436, 160 A.2d 791. She had boarded the car while carrying two shopping bags, set one bag down, deposited her money in the fare box with one hand, said to the driver, "just a minute," and began to turn around. As she was turning, the driver started the car, which threw her down onto the floor. The driver had seen her board while carrying her shopping bags and also saw her put one of the bags by the fare box and deposit her fare. The Court of Appeals said that "a plaintiff passenger does not

make out a valid case of negligence, based on an alleged start or stop of a bus or trolley car, merely by adjectival descriptions of the nature of the sudden start or stop." *Id.* at 438, 160 A.2d 791 (*quoting Johnston v. Greyhound Corp.,* 139 F.Supp. 551, 555 (1956)). In *Retkowsky,* the Court further explained; 222 Md. at 438, 160 A.2d 791:

[Plaintiff] made no attempt to show any unusual or extraordinary effect upon any other passenger, that there were any spontaneous exclamations of excitement by anyone, that there was any physical damage to the streetcar or the bags that she was carrying, or that she was thrown or propelled any unusual distance when she fell.

The *Retkowsky* Court also took note of the fact that the requirement [of more than a mere adjectival statement to prove that a start was unusual or extraordinary] was not unique to Maryland, viz:

Proof of the negligence of a carrier by the characterization of the manner of stopping or starting a car or bus by strong adjectives or expletives will not generally suffice as descriptions of an act of negligence. This rule has been adopted generally by the courts as a matter of public policy, to avoid having liability based upon a mere expression of feeling on the part of the injured, which the experience of the courts has shown to be oftentimes the exaggeration of self-interest in anticipation of a judgment against a responsible defendant.

*Id.* at 441, 160 A.2d 791 (*quoting* 2 Harvey George Stevenson, *Negligence in the Atlantic States* 1198 (1954)).

In the subject case, Ms. Djan produced no evidence at trial concerning the motion of the bus, other than the adjectival description of the bus's motion quoted in Part I. There was no evidence that any passengers exclaimed at the start of the bus, that any baggage fell over or fell off a rack, that anyone else was injured, or that she was propelled any unusual distance. In short, there was no evidence presented of any definite, factual incident created by the start that would have showed the start to have been "so abnormal and extraordi-

nary" that it could legally have been found "to have constituted negligence in operation."

222 Md. at 438, 160 A.2d 791.

Because appellee presented insufficient evidence to prove that WMATA was negligent, the trial judge erred when he denied WMATA's motion for judgment notwithstanding the verdict.

**JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.**